Geronima MAYO, Appellant,

v.

**Thomas J. SCHILTGEN, District Director of Immigration and Naturalization Service, Appellee.**

No. 90–5425.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 24, 1990.

Decided Dec. 12, 1990.

Richard L. Breitman, Minneapolis, Minn., for appellant.

Mark C. Walters, Dept. of Justice, Washington, D.C., for appellee.

Before LAY, Chief Judge, HEANEY, Senior Circuit Judge, and WOLLMAN, Circuit Judge.

LAY, Chief Judge.

Geronima Mayo appeals the district court's [1] denial of her petition for a writ of habeas corpus, in which she sought review of the Board of Immigration Appeals (BIA)

---

1. The Honorable Harry H. MacLaughlin, United States District Judge for the District of Minnesota.

decision excluding her from the United States. The BIA upheld an immigration judge's order of exclusion based on the judge's findings that 1) Mayo was not eligible for her visa because she was married, and 2) Mayo materially misrepresented her marital status to the Immigration and Naturalization Service (INS). Petitioner then sought relief in district court and filed a petition for writ of habeas corpus. The district court denied the writ solely on the ground that Mayo was excludable because she misrepresented to the INS that she had no children. On review of the overall record we reverse and remand for further proceedings.

## I.

Geronima Mayo is a native of the Philippines who sought entry to the United States in 1987 under a second preference visa. Due to the great demand by Filipinos for immigration visas, Mayo waited six years until a visa became available. To qualify for the second preference visa, Mayo had to be an unmarried daughter of a lawful permanent resident of the United States. *See* 8 U.S.C. § 1152(e)(2) (1988). Mayo stated on her visa application that she was unmarried and had no children, and was granted a visa. Eligibility for a second preference visa does not depend in any way on whether the applicant has children.

On her arrival in San Francisco, Immigration and Naturalization Service (INS) inspectors searched Mayo's luggage and found photographs and an address book that suggested Mayo was married and had a child.[2] After questioning, and after several denials, Mayo admitted she had a son. The INS deferred Mayo's entry pending further investigation, but allowed her to travel on to Minnesota, where her sister lived.

In an interview with INS inspectors in St. Paul, Mayo admitted she had lived with her son's father, Juan Gamboa, but repeatedly denied she ever had been married. However, after an investigation in the Philippines, the INS discovered a marriage license application, marriage license, and marriage contract all in the name of Geronima Mayo and Juan Gamboa. Based on this evidence the INS commenced an exclusion proceeding against Mayo on June 16, 1988, charging Mayo with procuring a visa by material misrepresentation in violation of 8 U.S.C. § 1182(a)(19) (1988), and with possession of an invalid visa in violation of 8 U.S.C. § 1182(a)(20) (1988).

In response to the documentary evidence of her marriage, Mayo first claimed the documents were fraudulent, but later admitted she had signed the marriage documents but thought the documents constituted only a proposal of marriage that never was officially certified. She admitted, however, that she had lived with Gamboa for six months after signing the marriage contract. Mayo offered evidence purporting to show she had not been married, but this evidence had little probative value.[3]

The immigration judge ruled Mayo excludable, finding she was married and thus ineligible for her visa, and that she materially misrepresented her marital status. Upon receipt of the judge's exclusion order the INS took Mayo into custody. Mayo spent the next 22 months in jail until released into the custody of her sister by order of this court on August 29, 1990.

While incarcerated, Mayo appealed her exclusion to the BIA, and argued for the first time that her marriage was void because her marriage ceremony occurred before issuance of her marriage license. She supported this claim with marriage documents, which appear to indicate that the marriage ceremony took place on June 2, 1983, but also show that the marriage li-

---

**2.** The photographs appeared to be taken at a marriage ceremony and a baptism. The address book showed Mayo's name as "Baybee Mayo Gamboa."

**3.** For example, one witness merely testified to Mayo's good character. Another document in-

dicated that no marriage certificate involving Mayo was on file in Santa Cruz; but this evidence was irrelevant because the marriage documents found by the INS indicated that the marriage took place in Infanta.

cense and the marriage contract both were executed on June 26, 1983. Mayo's counsel presented legal authority to support her claim that in the Philippines a marriage is void if performed before receipt of a marriage license. She argued that if her marriage was void, she was then in fact eligible for her visa and her statement that she was unmarried was not a misrepresentation. Refusing to consider this evidence, the BIA affirmed the exclusion order, finding that Mayo was married and consequently her visa was invalid and her statement that she was not married was a material misrepresentation.

Mayo next submitted a petition for writ of habeas corpus to the district court pursuant to 8 U.S.C. § 1105a(b) (1988).[4] In the petition she argued her marriage was void and also alleged due process violations. The case was heard by a magistrate who recommended the petition be denied. The magistrate declined to address the validity of Mayo's marriage, and based his decision solely on the ground that Mayo materially misrepresented that she had no children. This allowed the magistrate to affirm the order of exclusion without determining whether Mayo had in fact been married.[5] The magistrate also denied relief on Mayo's due process claims. The district court adopted the magistrate's report and recommendation and denied the writ of habeas corpus without elaboration on July 26, 1990.

Mayo appealed the district court's decision to this court on August 28, 1990, and requested an emergency stay of the exclusion proceedings. At that time Mayo was in INS custody at the airport awaiting a flight back to the Philippines. This court granted an emergency stay and released Mayo into the custody of her sister in Brainerd, Minnesota. The court heard oral argument on September 24, 1990.

## II.

We initially address the district court's standard of review over an agency decision. In this case the agency is the Department of Justice, acting through the BIA. *Ruangswang v. INS*, 591 F.2d 39, 44 n. 6 (9th Cir.1978).

■ It is a well-settled principle of administrative law that a reviewing court may not uphold an agency decision based on reasons not articulated by the agency itself in its decision. *FPC v. Texaco, Inc.*, 417 U.S. 380, 397, 94 S.Ct. 2315, 2326, 41 L.Ed.2d 141 (1974); *SEC v. Chenery Corp.*, 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943); *see also Tongatapu Woodcraft Hawaii, Ltd. v. Feldman*, 736 F.2d 1305, 1308 (9th Cir.1984); *Patel v. INS*, 638 F.2d 1199, 1201 (9th Cir.1980); *Castillo–Felix v. INS*, 601 F.2d 459, 462 n. 6 (9th Cir.1979). In other words, a reviewing court cannot search the record to find other grounds to support the decision.[6] A court must consider the agency's rationale for its decision, and if that rationale is inadequate or improper the court must reverse and remand for the agency to consider whether to pursue a new rationale for its decision or perhaps to change its decision. *See* Friendly, Chenery *Revisited: Reflections on Reversal and Remand of Administrative Orders*, 1969 Duke L.J. 199, 209.

---

**4.** 8 U.S.C. § 1105a(b) provides for habeas corpus as the means for reviewing a final order of exclusion.

**5.** The magistrate stated:

Even if the undersigned Magistrate were to find that Mayo's marriage was void under Filipino law, it would not change the conclusion that Mayo failed to sustain her burden of proving that the visa was not procured by fraud.

*Magistrate's Report and Recommendation* at 15 (Civ. No. 4–89–713) (March 27, 1990).

**6.** The Supreme Court explained the rationale for this rule in *Chenery:*

If an order is valid only as a determination of policy or judgment which the agency alone is authorized to make and which it has not made, a judicial judgment cannot be made to do service for an administrative judgment. For purposes of affirming no less than reversing its orders, an appellate court cannot intrude upon the domain which Congress has exclusively entrusted to an administrative agency.

*Chenery,* 318 U.S. at 88, 63 S.Ct. at 459.

In this case the BIA based its decision to exclude Mayo solely on the fact that she was married. This finding directly established two bases for exclusion. As the BIA succinctly stated:

> Based on the record before him, the immigration judge concluded that the applicant was in fact married at the time of her attempted entry in 1987, that she willfully concealed this fact, and that she was therefore inadmissible to the United States under section 212(a)(19) of the Act. The immigration judge further determined that the applicant was excludable under section 212(a)(20) of the Act for lack of a proper immigrant visa.

BIA Order at 3 (File no. A41 252 383) (Aug. 9, 1989).[7]

■ The district court affirmed on a totally new ground. The district court found determination of the validity of Mayo's marriage not essential for its decision, ruling that Mayo's misrepresentation that she had no children was a material misrepresentation sufficient to support exclusion under 8 U.S.C. § 1182(a)(19).[8] The district court thus violated the *Chenery* rule by supplying its own rationale for affirming the agency's decision.

The INS suggests there is no *Chenery* problem in this case because the BIA referred in its opinion to Mayo's misrepresentation that she had no children. Review of the immigration judge opinion and the BIA decision, however, indicates that the judge and the BIA considered Mayo's misrepresentation that she had no children solely in assessing Mayo's credibility.[9] The BIA did not specify this statement denying parenthood as a material misrepresentation constituting a ground for exclusion under section 1182(a)(19). The only misrepresentation the BIA specified as material was Mayo's statement that she was not married.

The only issue before the district court was the validity of the BIA's grounds for exclusion: Mayo was married and materially misrepresented that fact in her application for a visa. Because the district court did not address these issues, ordinarily we would remand the case to the district court to review the grounds of exclusion set forth by the INS. Here, however, we find that certain deficiencies in the record, Mayo's apparent difficulty in communicating in English, the lack of counsel at the evidentiary hearing, and the severe consequences of exclusion all necessitate a new hearing before the immigration judge.

In finding Mayo married, the immigration judge properly discredited her testimony based on her many inconsistencies. The judge, however, never considered Mayo's argument that her marriage was void. This argument was raised for the first time before the BIA, at the time when Mayo first received legal representation. Thus, the immigration judge did not consider Mayo's evidence that her marriage was void. This evidence included a discrepancy on her marriage contract showing the date of her marriage as June 2, 1983, but also apparently indicating that her marriage license was issued after that date. Mayo has submitted substantial authority supporting her argument that if the marriage ceremony was performed before issuance of a license, the marriage is void under Philippine law. If the marriage is void, Mayo is not excludable under section 1182(a)(20) because she then is eligible for her visa. Similarly, she then could not be guilty of the charged misrepresentation, material or otherwise, because her statement that she was unmarried was true. Mayo's theory is at least plausible, and she

---

7. The Board concluded:
   > Based on the foregoing, we conclude that the applicant is inadmissible because she willfully misrepresented a material fact, and because she was not in possession of a valid immigrant visa. We affirm the immigration judge's decision which ordered her excluded and deported from the United States under sections 212(a)(19) and (20) of the Act, and the appeal will be dismissed.

*BIA Order* at 6.

8. *See supra* note 5.

9. The Board discussed Mayo's various misrepresentations concerning the concealment of her child's existence and concluded: "Based on these inconsistencies, we concur in the immigration judge's findings regarding the applicant's lack of credibility." *BIA Order* at 5.

deserves a fair opportunity to present it.[10]

Although she did not raise this claim before the immigration judge, Mayo did raise the issue before the BIA after she obtained her attorney. Counsel moved for a remand to the immigration judge to consider extrinsic evidence in the form of affidavits supporting the claim of a void marriage contract. It is not clear why the motion for remand was not granted.[11] Although the BIA gave some consideration to the void marriage claim, it ultimately ruled that the evidence supporting the claim was "not properly before us, as the Board does not consider new evidence first proffered on appeal." *BIA Order* at 4–5. On that basis the BIA refused to consider the void marriage claim, and consequently that claim has never been decided at any level of review.

This failure to consider the void marriage claim is in some measure due to Mayo's failure to raise the claim initially. We do not condone Mayo's lack of candor in her dealings with the INS. We also understand, however, that she proceeded initially without counsel and with a marginal command of the English language. The hearing transcripts are replete with colloquies between Mayo and counsel that illustrate her inability to understand questions or to express herself. We feel that on remand her appointed counsel will ensure adequate representation.

Remand to the immigration judge also will cure some procedural defects that occurred during proceedings before the immigration judge. The INS retained an investigator in the Philippines to investigate whether Mayo was married. The INS submitted the investigator's report to the judge, but contrary to 8 C.F.R. § 3.30 (1989)[12] the INS did not serve the report and related marriage documents to Mayo until her final hearing before the immigration judge. The government urges petitioner did not object to the report, but again, she had no counsel. Mayo consequently did not have a fair opportunity to rebut the evidence in the report. She has since developed evidence supporting her void marriage theory that should be considered by the immigration judge.

Our concern for providing Mayo a fair and full opportunity to prove her eligibility for residency is motivated in part by the severe consequences of a decision against her. An order of exclusion will permanently bar her from living in the United States. Exclusion is indeed a harsh penalty:

> "Shutting off the opportunity to come to the United States actually is a crushing deprivation to many immigrants. Very often it destroys the hopes and aspirations of a lifetime, and it frequently operates not only against the individual immediately but also bears heavily upon his family in and out of the United States."

*Matter of S– and B– C–*, 9 I & N Dec. 436, 446 (Atty. Gen. 1961) (quoting Report of the President's Commission on Immigration and Naturalization, Jan. 1, 1953, p. 177).

A consequence of exclusion is that Mayo will not be able to live with her family here,

---

**10.** Assuming for purposes of argument that petitioner did participate in a marriage ceremony on June 2, 1983 before the mayor of Infanta, it is not implausible to find under the record that she and her putative husband later realized they needed a registered marriage license to appear on the marriage contract. Arguably, they applied for one on June 9, 1983. They signed the contract before witnesses and before the mayor on June 26. It is true that the printed language on the marriage contract states the license was exhibited to the mayor at the time of the wedding. However, the mayor twice certifies on the contract that Mayo and Gamboa were married *"on the date* and at the place *above* given" (emphasis added). The date listed above the foregoing sentence is June 2, 1983.

**11.** Indeed, the BIA cited *Matter of Obaigbena,* Interim Dec. 3042 (BIA 1988) for its ruling that the BIA will not hear new evidence on appeal. In *Obaigbena,* however, the court remanded the case for consideration of the new evidence. *Id.* at 7.

**12.** 8 C.F.R. § 3.30 provides: "A copy of all documents (including proposed exhibits or applications) filed with or presented to the Immigration Judge shall be simultaneously served by the presenting party on the opposing party or parties."

and may never see them again. Mayo must prove herself eligible to live in this country, and by her own actions she has put her eligibility in doubt, but she still is entitled to a fair opportunity to make her case for eligibility.

Accordingly we reverse the district court's denial of the writ of habeas corpus and remand to the immigration judge for an evidentiary hearing considering all aspects of Mayo's eligibility[13] for residency.[14]

**13.** On remand Mayo must assume the burden of proof. *See* 8 U.S.C. § 1361 (1988). The INS now claims that the marriage contract contains a typo and consequently the correct date of the marriage should be June 26, not June 2. Although Mayo has the burden of proof, she will meet that burden unless the INS adduces some evidence supporting its theory of a typographic error.

**14.** During the proceedings on remand Mayo shall remain at liberty under the previous order of this court, provided that she remain in the custody of her sister in Brainerd, Minnesota and does not otherwise jeopardize her custody by flight or similar wrongdoing. If the immigration judge enters a new order of exclusion, the INS may move to take Mayo into custody.