# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-2368

_____

| | | |
|---|---|---|
| Geronima Mayo, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | On Petition for Review of a |
| | * | Decision of the Board of |
| John Ashcroft, Attorney General of the | * | Immigration Appeals. |
| United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted:  December 10, 2002

Filed: January 27, 2003

_____

Before WOLLMAN, LAY, and HEANEY, Circuit Judges.

_____

LAY, Circuit Judge.

Geronima Mayo appeals a decision from the Board of Immigration Appeals (BIA) finding that she is not eligible for admission into the United States.  The BIA reversed an immigration judge's ruling that found Mayo did not materially misrepresent herself and was thus eligible to enter the country.  We hold the BIA did not set forth sufficient grounds for rejecting the immigration judge's credibility determinations.  We thus reverse and remand to the BIA for consideration of this matter in accordance with this opinion.

## I.

Geronima Mayo is a native of the Philippines. She sought admission to the United States on May 10, 1987. She obtained an immigrant visa and attempted to enter the country as the unmarried daughter of a lawful permanent resident. See 8 U.S.C. § 1152(e)(2) (1988). After arriving in San Francisco, California, the Immigration and Naturalization Service (INS) deferred her entry because an INS agent found pictures suggesting that she was married. Her case was transferred to Minnesota, where she had relatives. While Mayo remained in Minnesota, INS agents conducted an investigation in the Philippines. The INS discovered a marriage application, marriage license, and marriage contract bearing the names of Geronima Mayo and Juan Gamboa.

The INS commenced an exclusion hearing against Mayo on June 16, 1988. Immigration Judge Vinikoor presided over the hearing. Mayo was without counsel and had difficulty speaking English. The INS did not provide a translator at the hearing. The INS claimed Mayo falsely obtained a visa by concealing her marriage to Juan Gamboa in violation of 8 U.S.C. § 1182(a)(19) (1988) and 8 U.S.C. § 1182(a)(20) (1988). Mayo claimed the documents discovered in the Philippines constituted only a proposal of marriage – not an officially certified marriage. Judge Vinikoor did not find Mayo's statements credible and ruled that she had made a material misrepresentation by concealing her marriage. He ordered her excludable from the United States. Thereafter, the INS detained Mayo in jail for twenty-two months.

Mayo appealed Judge Vinikoor's decision to the BIA. She claimed for the first time on appeal that the marriage was void because her marriage ceremony took place before her marriage license was issued. Under Filipino law, this would make the marriage void. The BIA refused to consider this evidence and affirmed Judge Vinikoor's order.

Mayo then obtained counsel who filed a petition for a writ of habeas corpus in the United States District Court for the District of Minnesota. The district court affirmed the BIA but did so on different grounds than what the BIA had held. Mayo then filed a petition for a temporary stay with this court. We granted the stay and released Mayo into the custody of her sister in Brainerd, Minnesota.

Thereafter, this court reversed the district court. See Mayo v. Schiltgen, 921 F.2d 177 (8th Cir. 1990). We held that the district court was without authority to affirm the BIA for different reasons than the BIA used. Id. at 180. We also remanded the case to the BIA for a new evidentiary hearing. Id. at 181. We found her initial hearing before Judge Vinikoor deficient because Mayo did not have an attorney or a translator. Id. We also found that the INS violated 8 C.F.R. § 3.30 (1989) because it submitted an investigator's report to the immigration judge without giving Mayo a copy of the report. Id. We remanded the case, taking note that Mayo should be afforded an attorney and a translator at the new hearing. Id.

On May 23, 1991, the BIA ordered a new hearing pursuant to our direction. The hearing took place before Immigration Judge John M. Bryant. Testimony was taken by telephone and in person through the latter part of 1991 and parts of 1992. On May 13, 1993, Judge Bryant issued his decision and found that Mayo should not be deported. He described Mayo's testimony as "straightforward and credible." He determined that Mayo honestly believed that she was not married to Mr. Gamboa, and therefore did not willfully misrepresent her marital status to the BIA. Judge Bryant thus granted Mayo a Section 212(k) waiver of admissibility.

Judge Bryant also ruled that even if a marriage ceremony took place, the ceremony was void because it was performed before the issuance of a marriage license. The INS attempted to prove the validity of the marriage through the testimony of Mayor Valencia. The Mayor claimed that he performed the marriage immediately after issuing a valid marriage license. Judge Bryant did not find the

Mayor's testimony credible because the Mayor's statements were inconsistent with his prior affidavit. Accordingly, Judge Bryant did not rely upon any of the Mayor's statements. He instead ruled that the marriage was void because it was performed without a valid marriage license.

The INS appealed Judge Bryant's decision on May 29, 1993. <u>Nine years later</u>, on April 29, 2002, the BIA reversed Judge Bryant's decision. The BIA said that it "need not be so quick to find the applicant credible." The BIA ruled that Mayo had continually and materially misrepresented her marital status to authorities. The BIA also ruled that Mayor Valencia provided Judge Bryant with accurate and credible testimony. On that basis, the BIA declared Mayo had entered into a valid marriage and thus was not eligible for admission into the United States. The BIA reversed Judge Bryant and issued an order excluding Mayo from the United States.

Mayo filed a petition for review in this court on May 29, 2002.

II.

A.    <u>Credibility Determinations</u>

We first address the BIA's standard of review over an immigration judge's credibility determinations. Past BIA decisions recognize that the Board "accords deference to the Immigration Judge's findings concerning credibility. . . ." <u>In re A.S.</u>, 21 I. & N. Dec. 1106, 1109 (1998). The BIA bestows such deference even when it reviews a case de novo. <u>Id.</u> The BIA usually does not disturb an immigration judge's credibility finding. <u>In re V-T-S</u>, 21 I. & N. Dec. 792, 798 (1997). It gives the findings "significant weight." <u>Id.</u> <u>See</u> <u>also</u> <u>Paramasamy v. Ashcroft</u>, 295 F.3d 1047, 1050 (9th Cir. 2002) (stating "immigration judge's demeanor findings are accorded substantial deferential review"); <u>Rusu v. I.N.S.</u>, 296 F.3d 316, 323 (4th Cir. 2002)

-4-

(recognizing that the BIA accords deference to an immigration judge's credibility findings).

The BIA grants deference to an immigration judge's credibility findings because the judge personally observes the petitioner's testimony. In re A.S., 21 I. & N. at 1109. The BIA, in contrast, does not hear evidence. Chae Kim Ro v. I.N.S., 670 F.2d 114, 116 (9th Cir. 1982). It is well settled that "an immigration judge is in the best position to make credibility findings because he sees the witness as the testimony is given." Hartooni v. I.N.S., 21 F.3d 336, 342 (9th Cir. 1994). Accordingly, the BIA is required to have a "legitimate articulable basis to question the petitioner's credibility, and must offer a specific, cogent reason for any stated disbelief." Id.

In the present case, the BIA began its analysis by citing the proper standard for reviewing credibility determinations. It then rejected Judge Bryant's credibility findings. The BIA gave three reasons for rejecting Judge Bryant's findings. It said: 1) Judge Vinikoor's hearing established Mayo's "continuous misrepresentations to the authorities;" 2) the Eighth Circuit's previous opinion agreed with Judge Vinikoor's credibility determination and ruled that Mayo was not credible; and 3) Judge Bryant qualified his credibility determination by saying that Mayo's "story stretches the truth." We find these reasons do not sufficiently justify the BIA's decision. The BIA overlooked that this court vacated Judge Vinikoor's findings and remanded the case for a new hearing. The BIA failed to give Judge Bryant's findings proper deference.

The BIA's decision exclusively relied upon Judge Vinikoor's original ruling. However, we previously held that Judge Vinikoor's hearing was faulty because it contained a number of procedural defects. We also found that Mayo "proceeded initially without counsel and with a marginal command of the English language." Mayo, 921 F.2d at 181. We noted that "[t]he hearing transcripts are replete with

colloquies between Mayo and counsel that illustrate her inability to understand questions or to express herself." Id. We further noted that the INS violated 8 C.F.R. § 3.30 (1989) by submitting an investigator's report to the judge without first revealing it to Mayo. Id. These procedural defects prohibited Mayo from receiving a fair hearing. Accordingly, we remanded the case to the BIA to have a new evidentiary hearing before an immigration judge.

Our opinion emphasized that the new hearing would be analogous to a new trial. We instructed the immigration judge to consider "all aspects of Mayo's eligibility" during the new hearing. Id. at 182. Mayo was to be afforded a translator and counsel to ensure proper communication with authorities. We intended to correct the procedural defects of the first hearing and give Mayo "a fair opportunity to make her case for eligibility." Id.

Judge Bryant made new credibility determinations and did not rely upon any of the evidence from the earlier hearing. Judge Bryant acknowledged his de novo review of the case: "I found and wish to emphasize, that the Eighth Circuit clearly envisioned a de novo 'evidentiary hearing' that considers 'all aspects of Mayo's eligibility.'" In re Geronima Mayo, No. A 41 252 383, Slip Op. at 6-7 (U.S. Immigration Ct., May 13, 1993) (quoting Mayo, 921 F.2d at 182). He went on to say that "[s]ince the previous Immigration Judge, and the Board of Immigration Appeals, found the applicant not credible, she cannot have a fair opportunity to develop her plausible theory *unless her eligibility for admission, and her credibility are considered anew.*" Id. at 7 (emphasis added).

The BIA misread our opinion and once again improperly relied on Judge Vinikoor's defective hearing. The BIA summarily rejected Judge Bryant's credibility determinations. It instead should have conducted an independent evaluation of Judge Bryant's findings. Judge Vinikoor's hearing is no longer controlling and cannot be

used to discredit Mayo. We thus reject the BIA's reliance on Judge Vinikoor's opinion.

The BIA also improperly relied upon statements from our original opinion to discredit Mayo. It claims that we endorsed Judge Vinikoor's findings in our previous decision because we said he "properly discredited [Mayo's] testimony based on her many inconsistencies." Mayo, 921 F.2d at 180. The BIA once again misread our opinion. We did not endorse Judge Vinikoor's findings. We ultimately concluded that those inconsistent statements should not be used against her because the procedural defects (an attorney and translator) in the hearing materially contributed to the appearance of her lack of candor. Id. at 181.

This leaves the BIA with one remaining reason for rejecting Judge Bryant's findings. The BIA stated it did not need to defer to Judge Bryant because he tempered his finding when he said that Mayo's story "stretched [her] credibility." This statement is not sufficient to reverse Judge Bryant. Judge Bryant unequivocally concluded that Mayo gave credible testimony. He praised Mayo's credibility and candor. He wrote: "I observed the testimony and demeanor of the applicant and found her to be honest, straightforward and credible . . . . The applicant was candid before me and disgorged the lack of candor in her prior dealings with the service and before Judge Vinikoor in her 1988 exclusion hearing." In re Mayo, Slip Op. at 8-9. Judge Bryant unambiguously found Mayo credible. The BIA did not set forth cogent and articulate reasons for rejecting Judge Bryant's conclusion, and thus we conclude that its decision to do so cannot be permitted to stand.

B.      The Validity of the Marriage

We next address the BIA's conclusion that Mayo entered into a valid marriage with Juan Gamboa. The BIA rejected Judge Bryant's credibility determination of Mayor Valencia. Judge Bryant ruled that the Mayor's testimony was "inconclusive

-7-

and unreliable." He pointed to a number of inconsistent statements made by the Mayor. The Mayor's inconsistent statements led Judge Bryant to conclude that the Mayor signed Mayo's marriage license after the supposed marriage ceremony, thereby making the marriage void ab initio. The BIA rejected Judge Bryant's determination. The BIA said: "We are not as quick as the immigration judge to discount the Mayor's testimony." The BIA stated that the Mayor's inconsistent statements do not provide it with adequate reason to discredit his entire testimony.

We are not satisfied with the BIA's explanation. The BIA did not give Judge Bryant's findings proper deference. The BIA summarily rejected Judge Bryant's credibility determination and failed to provide an adequate justification for its ruling. Judge Bryant set forth clear, cogent reasons for discrediting the Mayor's story. He reached a reasonable conclusion based on his observations at the hearing.[1] If the BIA wished to reverse Judge Bryant's credibility determination, it was required to set forth convincing reasons and was not free to simply reject Judge Bryant's findings.

---

[1]We acknowledged the reasonableness of this conclusion in our earlier opinion:

> Assuming for purposes of argument that petitioner did participate in a marriage ceremony on June 2, 1983 before the Mayor of Infanta, it is not implausible to find under the record that she and her putative husband later realized they needed a registered marriage license to appear on the marriage contract. Arguably, they applied for one on June 9, 1983. They signed the contract before witnesses and before the mayor on June 26. It is true that the printed language on the marriage contract states the license was exhibited to the mayor at the time of the wedding. However, the mayor twice certifies on the contract that Mayo and Gamboa were married "on the date and at the place above given" (emphasis added). The date listed above the foregoing sentence is June 2, 1983.

Mayo, 921 F.2d at 181 n.10.

The record surrounding the Mayor's allegedly forged affidavits gives us further reason to support Judge Bryant's findings. The Mayor first filed an affidavit in 1989 stating that he did not remember the details of Mayo's marriage. In 1991, the Mayor filed a second affidavit. In the second affidavit, the Mayor recounted details about Mayo's marriage ceremony and said he issued Mayo's marriage license before he conducted her ceremony. Mayo's attorney questioned the authenticity of the Mayor's signature on the second affidavit. The Mayor responded by filing a Certification verifying that the signature on the second affidavit was his own.

To resolve the dispute over the Mayor's signature, Judge Bryant heard testimony from a number of experts. Mayo's expert testified that the 1991 affidavit contained a forged signature. The expert also questioned the validity of the Mayor's signature on the Certification. Similarly, Mr. Leopoldo Merza, the Civil Registrar of Infanta, testified that the documents were not authentic because he had never seen such a signature by the Mayor. The INS's expert, on the other hand, testified that it was impossible to know if the signatures were authentic. Gil Valencia, an INS examiner, also testified for the INS. He told the court that the Mayor's signature was authentic because he personally obtained it while in the Philippines.

Judge Bryant ultimately found the contents of the Mayor's affidavits were unreliable. He said the record made it impossible to tell whether the affidavits were authentic. The BIA, on the other hand, said the dispute over the Mayor's affidavit does not provide an adequate reason to discredit the Mayor's testimony. We do not find the BIA's explanation sufficient. This court has examined the findings of Judge Bryant and the testimony of the experts as well as the Mayor's statements. We find, as did Judge Bryant, that there is a great deal of evidence to support the findings that the Mayor's signature was forged and was not a valid signature. We conclude, based upon this overall testimony, that the marriage was void because it was performed prior to the time that a valid marriage license was signed by the Mayor.

C.    The Section 212(k) Waiver

We lastly address the BIA's decision regarding the Section 212(k) waiver. Section 212(K) applies to immigrants who were unaware of their ineligibility for admission to the United States.  See Senica v. I.N.S., 16 F.3d 1013, 1014 (9th Cir. 1994). The statute gives the Attorney General discretion to admit an immigrant who was unaware of her ineligibility for admission and who could not have discovered this ineligibility by exercise of reasonable diligence.[2]  In the present case, Judge Bryant ruled that Mayo qualified for a Section 212(K) waiver because she believed that she was not married at the time of her attempted entry into the United States.

The BIA ignored Judge Bryant's grant of a Section 212(k) waiver.  We do not find anywhere in the BIA's opinion where it addresses this issue.  The BIA must address the discretion given to the immigration judge by way of the statute.  It must also explain why it disagrees with Judge Bryant's conclusions surrounding the Section 212(k) waiver.  The BIA must give reasons for finding that Mayo knowingly misrepresented her marital status.  We believe that Judge Bryant properly exercised his discretion in granting Mayo a Section 212(k) waiver.  It was not unreasonable for

---

[2]The Act states:

> Any alien, excludable from the United States under paragraph (5)(A) or 7(A)(i) of subsection (a), who is in possession of an immigrant visa may, if otherwise admissible, be admitted in the discretion of the Attorney General if the Attorney General is satisfied that exclusion was not known to, and could not have been ascertained by the exercise of reasonable diligence by, the immigrant before the time of departure of the vessel or aircraft from the last port outside the United States and outside foreign contiguous territory, before the time of the immigrant's application for admission.

8 U.S.C. § 1182(k).

Judge Bryant to conclude that Mayo believed she was not married when she entered the country.

## III.

In <u>Ventura v. I.N.S.</u>, 123 S. Ct. 353 (2002), as well as in <u>Chen v. I.N.S.</u>, 123 S. Ct. 549 (2002), the Supreme Court reversed the Ninth Circuit and held that the court of appeals should have applied the ordinary remand rule so that the BIA could open the record and remand it to the immigration judge for further hearings. The Supreme Court held that a court of appeals, except in rare circumstances, "should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." <u>Ventura</u>, 123 S. Ct. at 355. In the present case, we find rare circumstances exist such that the Petitioner is entitled to have Judge Bryant's order carried out.

The circumstances which compel our ruling are as follows: When Petitioner was detained in 1988, she should have been placed in the custody of her sister rather than spending twenty-two months in the Ramsey County Jail in St. Paul. This court renounced the unfair treatment to this immigrant in its earlier decision. Furthermore, the BIA took nine years to issue a ruling on Mayo's appeal and failed to follow the direction of this court in our 1990 opinion. As we issue this opinion, it has been almost twelve years since the case initially came before this court. Under the circumstances, we find that keeping the Petitioner in limbo as to whether she should be excluded from the United States is not justified.

As our opinion now shows, this court has reviewed the findings of Judge Bryant upholding the credibility of the Petitioner. The finding that the Mayor's affidavits bordered upon fraud justifies remanding the case to the BIA with directions to affirm Judge Bryant's order. Petitioner should be granted citizenship and waiver of admissibility under Section 212(k).

Our concern for immediate action in this case was first stated by the President's Commission on Immigration and Naturalization in 1953:

> Shutting off the opportunity to come to the United States actually is a crushing deprivation to many immigrants. Very often it destroys the hopes and aspirations of a lifetime, and it frequently operates not only against the individual immediately but also bears heavily upon his family in and out of the United States.

Matter of S- and B- C-, 9 I. & N. Dec. 436, 446 (Atty. Gen. 1961) (quoting Report of the President's Commission on Immigration and Naturalization, Jan. 1, 1953, p. 177).

Exclusion is indeed a harsh penalty. We find that it is only fair that the Petitioner not be deported and that the waiver found by Judge Bryant should stand. We conclude that the procedural delay of this case is such that further hearing by the BIA under these circumstances would not be fair.

No immigrant should have to live over ten years with the uncertainty as to whether she can stay in this country or not. We remand to the BIA with directions that Judge Bryant's order be carried out and that the Petitioner be granted citizenship and waiver of eligibility under Section 212(k).

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.