# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2164

_____

| | | |
|---|---|---|
| Taddese Lencho Gemechu, | * | |
| | * | |
| Petitioner, | * | |
| | * | |
| v. | * | Petition for Review of an Order of |
| | * | the Board of Immigration Appeals. |
| John Ashcroft, Attorney General of | * | |
| the United States of America, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: June 14, 2004
Filed: November 5, 2004

_____

Before MURPHY, BRIGHT, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Taddese Lencho Gemechu ("Gemechu") seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). The BIA affirmed the decision of the Immigration Judge ("IJ") that found Gemechu was not credible and that he failed to meet his burden of proof for establishing that he has a well-founded fear of persecution in his home country of Ethiopia.

## I.    Procedural Background

Gemechu entered the United States on August 29, 1998 on a student visa with authorization to remain in the country until May 31, 2000. On August 2, 2000, Gemechu filed for asylum with the Immigration and Naturalization Service ("INS"). In an October 2, 2000 Notice to Appear, the INS charged Gemechu with being subject to removal for overstaying his visa. At an initial hearing, Gemechu admitted the factual allegations in the Notice to Appear and conceded removability. However, Gemechu requested asylum under the Immigration and Nationality Act ("INA") § 208, 8 U.S.C. § 1158, withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and relief under Article III of the Convention Against Torture.

The IJ held hearings on the merits on January 17, 2001 and March 12, 2001. In an order dated March 12, 2001, the IJ found Gemechu failed to provide sufficient credible evidence of a well-founded fear of future persecution and denied his application for asylum, withholding of removal, and relief under the Convention Against Torture. The IJ granted Gemechu sixty days to voluntarily depart the United States. The IJ also found Gemechu ineligible for asylum for failure to file his asylum application within one year of entering the United States.

On March 30, 2000, Gemechu filed a timely appeal with the BIA. The BIA affirmed the IJ's credibility finding and ultimate conclusion that Gemechu was not eligible for asylum, but declined to adopt the IJ's findings on timeliness.

## II.    Factual Background

Gemechu testified to the following facts. Gemechu was born on November 21, 1971 in Ghinchi, Ethiopia. His ethnicity is Oromo. His father died in about 1977 after being taken by the government. Gemechu's mother lives in Ghinchi. She works by brewing and selling beer. She also receives pension checks from the government

because Gemechu's father was a police officer. Gemechu has two brothers and two sisters. Gemechu's minor sisters live with Gemechu's mother. Gemechu's brother, Alemu, has a master's degree in plant pathology and has worked at an agricultural research institute. Gemechu's other brother, Melaku, was in school but then went into hiding.

Gemechu testified that he fears returning to Ethiopia because of his involvement in the Oromo Liberation Front ("OLF"). Gemechu has been a member of the OLF since 1989. The OLF became an illegal organization in 1992 when it withdrew from the government. At that time, Gemechu burned his OLF identification card.

Gemechu testified that he taught Oromo history in Ghinchi at a school during a summer break. He stated he was arrested and detained for over one month because of his teachings.

Gemechu attended college tuition-free and graduated first in his class from the Addis Ababa University in 1995. He then worked at the Ministry of Justice as a clerk for two months, then as a lecturer at the government-run Ethiopian Civil Service College for approximately two and a half years. Gemechu became a member of the Senate at the Ethiopian Civil Service College and was elected secretary of the Senate. During some of his time at the Ethiopian Civil Service College, Gemechu also served as a part-time lecturer at Addis Ababa University. Gemechu claims that he was secretly involved in the OLF during this time. In 1998, Gemechu received a scholarship to the University of Michigan Law School. The Ethiopian government offered him a scholarship to the Civil Service college instead. Gemechu rejected the Civil Service scholarship and was fired from his position at the College.

Gemechu came to the United States to pursue a graduate degree at the University of Michigan Law School. In Michigan, Gemechu had some contact with

Oromos, but did not attend OLF meetings. Gemechu graduated in June 1999. He then went to live with Habtamu Birhanu Awetu ("Awetu") in Minnesota for a year. Awetu, who testified at the March 12, 2001 hearing, stated that he knew Gemechu beginning in 1991 and that they are both members of the OLF. Gemechu testified that he was a member of the foreign relations office in the Oromo community center while living in Minnesota. During this time, he was employed in the mail room of Norwest.

Gemechu testified that in March 2000 he received a letter from his brother about an incident at Ambo, Ethiopia. In the letter, Melaku stated he had been beaten and detained by the government. Melaku said he was released, but is currently in hiding in Ethiopia. Melaku stated that Gemechu's other brother Alemu was imprisoned and was possibly still imprisoned. Melaku also said that the government asked Gemechu's family members about Gemechu's whereabouts, though Gemechu admitted on the stand that it was "normal" for the government to ask about people. Gemechu testified that he was planning to return to Ethiopia to teach until he received this letter and became fearful that he would be persecuted should he return.

## III. Statutory Background

"The Attorney General may grant asylum to an alien . . . if the Attorney General determines that such alien is a refugee." 8 U.S.C. 1158(b)(1). A refugee is "any person who is outside any country of such person's nationality . . . who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. 1101(a)(42)(A).

The petitioner has the burden of showing refugee status. 8 C.F.R. 208.13(a) (2004). To show a well-founded fear of persecution, the petitioner "must demonstrate

a fear that is subjectively genuine and objectively reasonable. For an alien's fear of persecution to be objectively reasonable, the fear must have basis in reality and must be neither irrational nor so speculative or general as to lack credibility." Perinpanathan v. I.N.S., 310 F.3d 594, 598 (8th Cir. 2002) (internal citation omitted).

## IV.   Standard of Review

The BIA's decision is the final agency decision and the subject of our review. To the extent that the BIA adopted the IJ's findings, we review those IJ findings as part of the final agency decision. Krasnopivtsev v. Ashcroft, 382 F.3d 832, 837 (8th Cir. 2004).

"The BIA's determination that an alien is not eligible for asylum or withholding of deportation is reviewed for substantial evidence, and may not be overturned unless 'the evidence was so compelling that no reasonable fact finder could fail to find the requisite fear of persecution.'" Perinpanathan, 310 F.3d at 597 (quoting Feleke v. I.N.S., 118 F.3d 594, 598 (8th Cir. 1997)); see 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude the contrary."). In our analysis, we consider "whether, based on the record considered as a whole, the BIA's decision was supported by reasonable, substantial, and probative evidence." Perinpanathan, 310 F.3d at 597 (internal quotations omitted).

"It is well settled that 'an immigration judge is in the best position to make credibility findings because he [or she] sees the witness as the testimony is given.'" Mayo v. Ashcroft, 317 F.3d 867, 871 (8th Cir. 2003) (quoting Hartooni v. I.N.S., 21 F.3d 336, 342 (9th Cir. 1994)). We therefore "defer[] to an immigration judge's credibility finding where the finding is 'supported by a specific, cogent reason for disbelief.'" Perinpanathan, 310 F.3d at 597 (quoting Ghasemimehr v. I.N.S., 7 F.3d 1389, 1391 (8th Cir. 1993)).

## V.      Discussion

The IJ concluded, and the BIA affirmed, that Gemechu failed to prove he has a well-founded fear of future persecution should he return to Ethiopia. While the IJ found Gemechu's testimony about his education and employment credible, she found his testimony about his brother's detentions and his own membership in the OLF implausible and not credible. The IJ gave several specific, cogent reasons for disbelieving the testimony, so we must defer to the IJ's credibility finding.

Among the reasons the IJ gave for not believing Gemechu's testimony were the following. First, Gemechu failed to present any objective evidence of his membership in the OLF. He failed to present any documentation connecting him to the OLF, though Awetu was able to procure a letter corroborating his own OLF involvement in Awetu's asylum proceeding.

Second, Gemechu failed to present any documentation that his brothers were detained by the government, although resources exist that could substantiate the alleged detainments. Gemechu presented one letter from his brother, Melaku, dated March 20, 2000 that claimed that Melaku, Alemu, and Gemechu's mother had been arrested, and that Alemu had not yet been released. However, Awetu testified that Gemechu had received between five and seven letters from his brother during the time Gemechu and Awetu lived together. Gemechu failed to produce these letters that apparently would have substantiated his claims that Alemu remained in prison.

Third, the IJ found it implausible that the government would be searching for Gemechu because the government was aware that Gemechu had accepted a scholarship to study in the United States.

Fourth, the IJ considered the country conditions in Ethiopia and found it unlikely Gemechu would be persecuted for his alleged membership in the OLF. The

U.S. Department of State 1999 Country Reports on Human Rights Practices for Ethiopia states that while membership in the OLF is illegal, the government draws a distinction between OLF leaders and mere members, and mere membership is not itself a cause for arrest. See Gebrehiwot v. Ashcroft, 374 F.3d 723, 726 (8th Cir. 2004) (The "IJ reasonably may rely upon the State Department's assessment of current country conditions as they relate to the likelihood of future persecution, given the Department's expertise in international affairs." (internal quotations omitted)) The IJ also noted that Oromos are the largest ethnic group in Ethiopia, making up about thirty-five percent of the population.

Fifth, the IJ found that Gemechu had excelled in Ethiopia. He attended college tuition-free and graduated at the top of his class. He gained prestigious positions of employment with the government, and was elected to the Senate at the University at which he worked. Gemechu's achievements undermine his claims that the government would persecute him in the future.

## VI. Conclusion

Substantial evidence supports the BIA's and IJ's conclusion that Gemechu failed to demonstrate a well-founded fear of persecution. Since Gemechu has not met the standard for asylum, it follows that he has failed to meet the higher standard for withholding of removal. See Zakirov v. Ashcroft, 384 F.3d 541, 547 (8th Cir. 2004). Gemechu has also failed to show that it is more likely than not that he will be tortured should he return to Ethiopia. He is therefore not entitled to relief under the Convention Against Torture. Id.

Accordingly, we deny the petition for review.

_____