**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

KYONG HO SHIN; JIN HEE SHIN,
                   *Petitioners,*

v.

ERIC H. HOLDER JR., Attorney
General,
                   *Respondent.*

Nos. 06-73782
        06-73785

Agency Nos.
A047-055-519
A047-415-708

OPINION

On Petitions for Review of Orders
of the Board of Immigration Appeals

Argued and Submitted
March 12, 2010—San Francisco, California

Filed June 11, 2010

Before: J. Clifford Wallace, Susan P. Graber, and
M. Margaret McKeown, Circuit Judges.

Opinion by Judge McKeown;
Dissent by Judge Wallace

**COUNSEL**

John J. Marandas, Lake Oswego, Oregon, for the petitioners.

Alison Marie Igoe and Lindsay Williams, United States Department of Justice, Civil Division/Office of Immigration Litigation, for the respondent.

**OPINION**

McKEOWN, Circuit Judge:

We consider a non-citizen's eligibility for a waiver of inadmissibility under § 212(k) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(k) ("§ 212(k) waiver" or "§ 212(k) relief"). Section 212(k) applies to "immigrants who were unaware of their ineligibility for admission and who could not have discovered the ineligibility by exercise of reasonable diligence." *Senica v. INS*, 16 F.3d 1013, 1014 (9th Cir. 1994).

Kyong Ho Shin and Jin Hee Shin ("the Shins"), both citizens and nationals of South Korea, are siblings who unknowingly obtained lawful permanent residence through the criminal conspiracy of a former officer of the Immigration and Naturalization Service ("INS"), Leland Sustaire. In removal proceedings, the Shins sought a § 212(k) waiver of inadmissibility due to the invalid immigrant visas that were procured for them by their mother through the Sustaire scheme. The Board of Immigration Appeals ("BIA") found the Shins ineligible for § 212(k) relief because they never possessed valid immigrant visas and were not "otherwise admissible" within the meaning of the statute.

We grant the petitions for review. Section 212(k) expressly makes relief available to non-citizens, like the Shins, who are

deemed inadmissible for lacking a valid immigrant visa at the time of entry and are not inadmissible for any other reason. Because the Shins are eligible to seek such relief, we remand the case to the BIA for a ruling on the merits of their petitions.

## BACKGROUND

Between 1986 and 1994, Sustaire conspired with several middlemen in the Korean-American and overseas Korean community to produce fraudulent Form I-551 Alien Registration Cards, or "green cards," for their clients. Essentially this was a bribes for green cards scheme. Sustaire and his collaborators were ultimately convicted for conspiracy to bribe a public official, in violation of 18 U.S.C. § 371, after Sustaire turned himself in to law enforcement authorities. *See Chuyon Yon Hong v. Mukasey*, 518 F.3d 1030, 1032-33 (9th Cir. 2008) (detailing the background of the Sustaire scheme).

The Shins obtained their lawful permanent resident ("LPR") status derivatively through their mother, Ok Nyo Lee, who was admitted to the United States as an LPR in December 1991. Although Lee told her son, Kyong Ho, that she obtained her green card through her longtime employment as a hairdresser on a U.S. military base in Korea, in truth she obtained her green card through an immigration broker affiliated with Sustaire. Lee's Form I-130 Alien Relative Petitions for her children were approved in 1992. Visas were made available to the Shins approximately seven years later,[1] and the Shins submitted the requisite fees, police clearances, and supporting documentation to the U.S. Embassy in Seoul for processing. The consulate interviewed the Shins and issued immigrant visas. They were admitted to the United States as LPRs in 1999 and 2000, respectively.[2] The government initi-

[1]The Shins' visa category was "F24," unmarried son or daughter of a U.S. permanent resident.

[2]Kyong Ho Shin is married to a Japanese national and has two children, one of whom is a U.S. citizen. Jin Hee Shin is unmarried and has no children; she works as a registered nurse.

ated removal proceedings against Lee and the Shins in April 2003 upon linking them to the Sustaire scheme. The government alleged that Sustaire had caused a false immigration record to be created showing that Lee had adjusted to permanent residence as the spouse of a Skilled Worker or Professional holding a Baccalaureate Degree (Immigrant Visa Classification E39), and that this record formed the basis of the Shins' admission to the United States. The government charged the Shins with removability for lacking valid immigrant visas at the time of their entries into the United States under 8 U.S.C. §§ 1227(a)(1)(A), 1182(a)(7)(A)(i)(I).[3] The government also charged the Shins with seeking to procure an immigration benefit through fraud or misrepresentation, but ultimately withdrew that charge in immigration court. By all account in the present record, the Shins were innocent bystanders to Sustaire's fraudulent arrangement.

The immigration judge ("IJ") ordered removal of the Shins on August 11, 2005. The IJ ordered Lee's removal earlier that year. The IJ held that, although Lee "had not knowingly and wil[l]fully engaged in fraud," and the Shins had relied in good faith on their mother's representations that they were eligible to immigrate, Lee nevertheless obtained an invalid green card through the Sustaire connection, and the children's green cards were invalid by extension. The IJ also denied the request for a § 212(k) waiver and granted the Shins voluntary

---

[3]Section 1227(a)(1)(A) provides that "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." Section 1182(a)(7)(A)(i) provides that

> any immigrant at the time of application for admission who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title, is inadmissible.

departure. The BIA affirmed in an unpublished, single-member decision.

## ANALYSIS

We address two issues here: whether the BIA erred in finding that the Shins were removable and whether the BIA erred in holding them ineligible for § 212(k) relief.[4] We review the BIA's legal determinations de novo and its factual findings for substantial evidence. *Aguilar Gonzales v. Mukasey*, 534 F.3d 1204, 1208 (9th Cir. 2008).

## I. REMOVABILITY

The BIA found that although the Shins may have been " 'two or three degrees removed' from the [Sustaire] scheme," their immigrant visas were tainted by the initial unlawful grant of LPR status to their mother. The Shins qualified for their immigrant visas as the "unmarried son[ ] or unmarried daughter[ ] . . . of an alien lawfully admitted for permanent residence." 8 U.S.C. § 1153(a)(2)(B). Thus, the validity of their visas turns on whether Lee's admission for permanent residence was "lawful" in nature.

The Board cited two cases in support of its holding: *Monet v. INS*, 791 F.2d 752 (9th Cir. 1986), and *In re Koloamatangi*, 23 I&N Dec. 548 (BIA 2003). *Monet* and *Koloamatangi* construed the meaning of the phrase "lawfully admitted for permanent residence," which is found in the definitional provisions of the INA, 8 U.S.C. § 1101(a)(20) and its identical predecessor statute. Section 1101(a)(20) defines the phrase as "the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not hav-

---

[4]Because we reverse the BIA's denial of the Shins' § 212(k) petition, we do not address the Shins' arguments regarding due process and equitable estoppel.

ing changed." 8 U.S.C. § 1101(a)(20) (2006); *id.* § 1101(a)(20) (1976 & 1982).

**[1]** Both Monet and Koloamatangi sought forms of relief from deportation for which lawful admission for permanent residence was a condition precedent to eligibility—in the case of Monet, former INA § 212(c) relief; in the case of Koloamatangi, cancellation of removal under 8 U.S.C. § 1229b(a). However, both Monet and Koloamatangi concealed their inadmissibility at the time of their admission or adjustment to permanent residence.[5] We held that Monet had *never* been "lawfully admitted" for permanent residence and was ineligible to seek relief. As we explained, " '[a]dmission is not lawful if it is regular only in form. The term "lawfully" denotes compliance with substantive legal requirements, not mere procedural regularity.' " *Monet*, 791 F.2d at 753 (quoting *In re Longstaff*, 716 F.2d 1439, 1441 (5th Cir. 1983)). Similarly, the BIA in *Koloamatangi* held that "the correct interpretation of the term 'lawfully admitted for permanent residence' is that an alien is deemed, ab initio, never to have obtained lawful permanent resident status once his original ineligibility therefor is determined in proceedings." 23 I&N Dec. at 551; *accord Lai Haw Wong v. INS*, 474 F.2d 739, 742 (9th Cir. 1973) (holding that a "mistaken admission conferred no status, permanent resident or otherwise").[6] Under *Monet* and *Koloamatangi*, Lee was never "lawfully admitted" for perma-

---

[5]Monet had concealed a prior drug conviction at the time of admission, *Monet*, 791 F.2d at 753, and Koloamatangi had knowingly obtained LPR status through a bigamous marriage. *Koloamatangi*, 23 I&N Dec. at 549.

[6]Other circuits have applied the same rule to determine eligibility for various forms of relief from removal. *See, e.g.*, *Walker v. Holder*, 589 F.3d 12, 19-21 (1st Cir. 2009) (derivative citizenship); *Mejia-Orellana v. Gonzales*, 502 F.3d 13, 15-17 (1st Cir. 2007) (per curiam) (cancellation of removal); *De La Rosa v. DHS*, 489 F.3d 551, 554-55 (2d Cir. 2007) (former INA § 212(c) relief); *Savoury v. U.S. Attorney Gen.*, 449 F.3d 1307, 1313-17 (11th Cir. 2006) (same); *Arellano-Garcia v. Gonzales*, 429 F.3d 1183, 1186-87 (8th Cir. 2005) (same).

nent residence and thus the Shins' derivative visas were improperly granted.

The Shins' arguments that they were lawfully admitted for permanent residence despite their mother's status do not persuade us. Although the facts of both *Monet* and *Koloamatangi* involve acts of personal fraud or misrepresentation, their holdings broadly deem all grants of LPR status that were not in substantive compliance with the immigration laws to be void ab initio. *See Monet*, 791 F.2d at 753; *Koloamatangi*, 23 I&N Dec. at 550 (referring to individuals who had "obtained their permanent resident status by fraud, *or had otherwise not been entitled to it* (emphasis added)); *id.* at 551 (affirming "long-standing decisions holding that an alien [is] not 'lawfully' admitted for permanent resident status if, at the time such status was accorded, he or she was not entitled to it"). Other circuits are in accord. *See Walker*, 589 F.3d at 19-20; *Savoury*, 449 F.3d at 1310, 1315-17; *Arellano-Garcia*, 429 F.3d at 1185, 1186-87; *In re Longstaff*, 716 F.2d at 1440-41.

Significantly, the Shins were not substantively qualified for admission as LPRs at the time they entered the United States. They argue that a timing loophole saves their case. Although the IJ ultimately found Lee's admission for permanent residence to be void ab initio, the Shins posit that Lee retained her LPR status until the removal order of June 29, 2005. Accordingly, they argue, the Form I-130 relative petitions that Lee filed on the Shins' behalf and their resulting visas were valid at the time of the Shins' admission to the United States.

**[2]** The Shins are correct that "[e]ven where there are grounds to seek deportation or removal, a lawful permanent resident is lawfully present in the United States until a final deportation or removal order is entered." *Hernandez de Anderson v. Gonzales*, 497 F.3d 927, 943 (9th Cir. 2007); *see also* 8 C.F.R. § 1001.1(p) (providing that LPR status "terminates upon entry of a final administrative order of exclusion, deportation, removal, or rescission"). However, the issue of

whether an LPR retains her status until the conclusion of removal proceedings is distinct from whether she was "lawfully admitted" in the first place so that she may seek relief from removal or, as in this case, petition for an alien relative visa. Because Lee was never "lawfully admitted" to permanent residence, the Shins cannot validate their visas on the basis that she was an LPR until ordered removed. Both *Monet* and *Koloamatangi* reject the argument that the Shins raise here. *See Monet*, 791 F.2d at 754-55; *accord Savoury*, 449 F.3d at 1314; *Koloamatangi*, 23 I&N Dec. at 550.

**[3]** Finally, the IJ did not improperly revoke the Shins' alien relative petitions. Although IJs lack authority to decide whether an alien relative visa petition should be granted or revoked, they have jurisdiction to determine inadmissibility. *See* 8 C.F.R. § 204.1(e) (delimiting jurisdiction over immediate relative and family-sponsored visa petitions); *see also Matter of Marcal Neto*, 25 I&N Dec. 169, 174 (BIA 2010) (explaining that IJs "may examine the underlying basis for a visa petition when such a determination bears on the alien's admissibility"). Here, rather than "revoke" their visa petitions, the IJ found the Shins removable because they failed to present a valid immigrant visa at the time of their entry to the United States. The IJ acted entirely within his authority.

## II. SECTION 212(k) WAIVER

The Shins argue in the alternative that, even if they are removable, they are entitled to seek a waiver of inadmissibility under 8 U.S.C. § 1182(k), the "§ 212(k) waiver." That statute provides as follows:

> (k) Attorney General's discretion to admit otherwise inadmissible aliens who possess immigrant visas
>
> Any alien, inadmissible from the United States under paragraph (5)(A) or (7)(A)(i) of subsection (a) of this section, who is in possession of an immigrant visa

may, if otherwise admissible, be admitted in the discretion of the Attorney General if the Attorney General is satisfied that inadmissibility was not known to, and could not have been ascertained by the exercise of reasonable diligence by, the immigrant before the time of departure of the vessel or aircraft from the last port outside the United States and outside foreign contiguous territory or, in the case of an immigrant coming from foreign contiguous territory, before the time of the immigrant's application for admission.

*Id.* The BIA held that the Shins were ineligible to seek § 212(k) relief because they were never in possession of a valid immigrant visa and thus were not "otherwise admissible" within the meaning of the statute.[7]

The BIA's conclusion does not comport with a plain reading of the statute. As an initial matter, the government argues

---

[7]At oral argument, the government additionally argued that § 212(k) waivers are only available to inadmissible non-citizens and not deportable ones. However, the Shins are inadmissible because they lacked a valid immigrant visa at the time of their entry into the United States. *See* 8 U.S.C. § 1182(a)(7)(A)(i). Their inadmissibility on this basis is what makes them deportable. *See* 8 U.S.C. § 1227(a)(1)(A). Accordingly, the Shins seek § 212(k) relief to waive the predicate finding of inadmissibility. We have previously reviewed requests for § 212(k) waivers of non-citizens found deportable due to inadmissiblity. *Senica*, 16 F.3d at 1014.

The regulations also confirm that § 212(k) relief has long been available to deportable non-citizens such as the Shins. Prior to the 1996 immigration reform, former 8 C.F.R. § 242.8(a) (1996) expressly gave IJ the authority to hear § 212(k) petitions in the context of deportation proceedings, as contrasted with exclusion proceedings. *See Matter of Aurelio*, 19 I&N Dec. 458, 461 (BIA 1987) (acknowledging the IJ's jurisdiction). The current regulations governing deportation proceedings commenced prior to the effective date of the 1996 Act expressly preserve that authority. 8 C.F.R. § 1240.41(a). Section 1240.1(a)(1)(ii), which grants IJs authority to hear § 212(k) petitions in removal proceedings in general, does not depart from that approach.

that we owe *Chevron* deference to the Board's construction of § 1182(k). This is incorrect. An unpublished, nonprecedential BIA decision is entitled to only *Skidmore*, rather than *Chevron*, deference. *Barrios v. Holder*, 581 F.3d 849, 859 (9th Cir. 2009). Accordingly, the weight of the Board's decision depends on "the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Because the BIA's opinion is conclusory and lacks any meaningful analysis, we owe it no deference here.

**[4]** We turn first to a plain reading of the statute. Section 212(k) imposes three threshold requirements: (1) that the non-citizen be inadmissible under § 1182(a)(5)(A) or § 1182(a)(7)(A)(i); (2) that the non-citizen be "in possession of an immigrant visa;" and (3) that the non-citizen be "otherwise admissible." The Shins satisfy all three criteria. The Shins meet the first requirement *because* they lacked valid immigrant visas at the time of their entry into the United States, making them inadmissible under § 1182(a)(7)(A)(i)—which renders inadmissible an immigrant who does not have a "valid unexpired immigrant visa" or "other valid entry document"—and deportable under § 1227(a)(1)(A).

**[5]** The Shins similarly meet the second requirement because they were in possession of invalid immigrant visas at the time of entry. The BIA's apparent assumption that the "immigrant visa" in § 212(k) refers to a substantively valid visa conflicts with the statutory text. By definition, § 212(k) refers to visas that are invalid in nature—otherwise, the applicant would not be seeking a waiver of inadmissibility in the first place. Moreover, there is no textual basis for building-in substantive validity as a threshold criteria and excluding visas that are void ab initio from § 212(k) relief. Indeed, when § 212(k) is read with the inadmissibility grounds it incorporates, it is clear that § 212(k) extends to the visas that the

Shins presented at entry. Section 1182(a)(7)(A)(i)(II) makes inadmissible "any immigrant at the time of application for admission . . . whose visa has been *issued without compliance* with the provisions of section 1153 of this title." (emphasis added). Section 1153 in turn sets forth the substantive eligibility requirements for immigrant visas, including the visas which the Shins were improperly granted. *See* 8 U.S.C. § 1153(a)(2)(B) (defining as "qualified immigrants" the "unmarried sons or unmarried daughters . . . of an alien lawfully admitted for permanent residence"). Because the Shins were never "qualified immigrants," their visas were not issued in compliance with § 1153. The Shins' visa plainly falls within the scope of § 212(k).

**[6]** Finally, the Shins meet the third requirement in that their lack of a valid visa is the *only* reason they have been found inadmissible. As a result, they are "otherwise admissible." The invalidity of the Shins' visa goes to the first threshold requirement, not the third. The BIA's conclusion that the Shins are not "otherwise admissible" because they lacked a valid visa conflates these requirements. To treat the first requirement—lack of a valid visa—as a disqualifying event for the third requirement reads out the word "otherwise." A common-sense reading is that the individual must be admissible "other" than because of the invalid visa. *Cf. Corona-Mendez v. Holder*, 593 F.3d 1143, 1147 (9th Cir. 2010) (holding that "otherwise admissible" prong of the fraud waiver at 8 U.S.C. § 1227(a)(1)(H) "requires that the court consider whether the petitioner is inadmissible on more than one ground at the time of the fraud the petitioner seeks waived"); *accord INS v. Yueh-Shaio Yang*, 519 U.S. 26, 31-32 (1996) (explaining that "otherwise admissible" means not excludable on some ground other than the entry fraud).[8]

---

[8]The dissent argues that the Shins' invalid visas render them both inadmissible for lacking proper documentation at entry *and* "otherwise inadmissible" within the meaning of the § 212(k). But this is a form of double-counting. The term "otherwise" in § 212(k) plainly contemplates a basis

Despite this plain reading of the statute, the government seeks to bolster the BIA's holding that the Shins were not "otherwise admissible" by citing the definition of "immigrant visa" at 8 U.S.C. § 1101(a)(16), which refers to "an immigrant visa required by this chapter and properly issued by a consular officer at his office outside of the United States to an eligible immigrant under the provisions of this chapter." *Id.* Because Lee's LPR status was void ab initio, the government argues, the visas that the Shins obtained derivatively were not "properly issued" to them. We are not persuaded by this argument. The substantive flaw in the Shins' visas is a precondition, rather than a bar, to their seeking § 212(k) relief. In addition, the Shins' immigrant visas were issued according to the proper procedures: they were not procured by fraud, came through the appropriate consular authorities, and were genuine documents.

The government argues further that the § 212(k) waiver is never available "to cure fraud, or to legitimize an 'application' procedure that was in all other respects invalid." Instead, this section covers only situations in which a visa was initially approved according to proper procedures, but unforeseen events rendered the visa holder inadmissible by the time he arrived at the border. The basis for this argument is unclear.

_____

for inadmissibility apart from or in addition to inadmissibility for lacking a valid visa at entry.

As a counter-example, the Shins might not have been "otherwise admissible" had the government prevailed on both the original charges of deportability: that is, the lack of a valid immigrant visa *and* the attempt to procure entry or an immigration benefit through fraud and misrepresentation. The Attorney General can waive fraud or misrepresentation only if the applicant is the spouse, son, or daughter of a U.S. citizen or an LPR which, given the invalidity of Lee's LPR status, would not have been the case here. *See* 8 U.S.C. §§ 1182(i)(1), 1227(a)(1)(H). In this scenario, the Shins would therefore be ineligible for a waiver as they would be additionally inadmissible based on fraud. *See Singh v. Gonzales*, 451 F.3d 400, 402-03 (6th Cir. 2006).

As an initial matter, there are no allegations that the Shins committed fraud. More importantly, the government's position regarding invalid visas—for which it cites no authority—departs from the plain text of the statute. The very essence of the statute authorizes the Attorney General to waive "inadmissibility" based on invalid documentation in general. *Id.* § 1182(k).

The one Court of Appeals decision to have addressed and affirmed the grant of § 212(k) waiver, *Mayo v. Ashcroft*, 317 F.3d 867 (8th Cir. 2003), supports our interpretation of the statute. Mayo, a citizen of the Philippines, obtained an immigrant visa and attempted to enter the country as the unmarried daughter of an LPR. The INS deferred her entry because it found evidence suggesting that she was married. The IJ and BIA eventually ordered her exclusion on the ground that she had misrepresented her marital status. The Eighth Circuit initially remanded based on procedural deficiencies in Mayo's exclusion proceedings and, on remand, the IJ granted Mayo § 212(k) relief because Mayo believed she was unmarried at the time of her entry. *Id.* at 869-70. The Eighth Circuit affirmed on appeal. *Id.* at 873-74.

*Mayo* is relevant because the Eighth Circuit affirmed the grant of § 212(k) relief even though Mayo was not entitled to her visa at the time it became available to her. Mayo applied for her visa in 1981 and was allegedly married in June 1983; her visa did not become available to her until 1987. *Mayo v. Schiltgen*, 921 F.2d 177, 178-79 (8th Cir. 1990). On these facts, Mayo became ineligible for her visa when she married, and thus her visa was substantively invalid when issued in 1987. Nevertheless, as the Eighth Circuit held, § 212(k) relief remained available to waive Mayo's excludability. Similarly, in *Senica*, we considered the merits of a § 212(k) petition even though the petitioners' underlying visa was substantively invalid, 16 F.3d at 1014-16, as did the BIA in *Matter of Aurelio*, 19 I&N Dec. 458, 459, 462-63 (BIA 1987).

**[7]** In sum, the Shins were inadmissible under the specific statutory provisions referenced within § 212(k) because they had no valid immigrant visa and, other than the visa defect, they were otherwise admissible. This reading of the statute gives meaning to the threshold clauses of the statute. Compliance with the statutory requirements renders the Shins eligible for a waiver of inadmissibility.

### CONCLUSION

**[8]** Because nothing in § 1182(k) precludes the Shins from seeking a waiver of inadmissibility, we reverse the BIA and remand for a ruling on the Shins' applications for relief. *See INS v. Orlando Ventura*, 537 U.S. 12, 16-17 (2002) (per curiam).

The petitions for review are GRANTED.

---

WALLACE, Circuit Judge, dissenting:

I dissent from the majority's opinion because I have a real doubt that it represents the plain meaning of the statute, 8 U.S.C. § 1182(k). I favor remanding to the Board of Immigration Appeals (Board), so that the agency entrusted with administration of our immigration laws may first address the question of statutory interpretation presented here.

### I.

I agree with the result reached in section one of the majority opinion, which holds that the Shins are removable because they were never lawfully admitted to the United States. The Shins obtained their immigrant visas derivatively of their mother, Ok Nyo Lee, who was admitted to lawful permanent residence (LPR) status in 1991. Ms. Lee's status, however, was void *ab initio* for noncompliance with the immigration

laws, and the Shins' derivative visas are therefore void as well. *See Monet v. INS*, 791 F.2d 752, 753 (9th Cir. 1986); *In re Koloamatangi*, 23 I. & N. Dec. 548, 549 (BIA 2003).

## II.

I disagree, however, that the Shins are nevertheless eligible to seek the waiver of inadmissibility provided in section 212(k) of the Immigration and Nationality Act (INA). 8 U.S.C. § 1182(k). Section 212(k) vests the Attorney General with authority to admit certain "otherwise inadmissible aliens who possess immigrant visas," who did not know of, and could not have "ascertained by the exercise of reasonable diligence" the basis for his or her inadmissibility. Eligibility for discretionary relief under section 212(k) is extended only to those aliens who are (1) inadmissible under 8 U.S.C. §§ 1182(a)(5)(A) & (7)(A)(I); (2) "in possession of an immigrant visa;" and (3) "otherwise admissible."

The Shins meet the first prerequisite set forth in section 212(k): they were deemed inadmissible under 8 U.S.C. § 1182(a)(7)(A)(I). But the Shins have not demonstrated that they meet the second and third preconditions. The Shins were not actually "in possession of [ ] immigrant visa[s]" because, as we have already determined, their visas were void *ab initio*. In addition, the Shins do not appear to be "otherwise admissible." Their visas were derivative of their mother's fraudulently-obtained LPR status. As her status provides no basis for the validation of their visas, the Shins have no basis for admission. The Shins were not "substantively qualified" for the visas that they received and thus not "otherwise admissible."

The majority reads the statute as imposing two relevant preconditions to the Shins' eligibility for a 212(k) waiver: that they be inadmissible under section 1182(a)(7)(A)(I) and that they be "otherwise admissible." The majority reasons that the Shins' lack of valid visas is relevant only to the first require-

ment. The majority reasons, further, that to consider the
Shins' lack of valid visas as to the second requirement would
conflate the two requirements and render the term "otherwise"
surplusage.

But what is the meaning of the term "otherwise admissible"
under the majority's view? And what of the requirement that
aliens seeking section 212(k) waivers be "in possession of an
immigrant visa"? The majority's opinion does not represent
the plain meaning of section 212(k). The provision, like many
other waiver provisions within the INA, is directed at the dif-
ficult task of providing a discretionary avenue for the admissi-
bility of otherwise inadmissible persons. Indeed, use of the
phrase "otherwise admissible" in other sections of the statute
has given rise to disagreement and confusion. *See, e.g.*, *Reid
v. INS*, 420 U.S. 619 (1975); *INS v. Errico*, 385 U.S. 214, 218
(1966) ("The sharp divergence of opinion among the circuit
judges in these cases indicates that the meaning of the words
'otherwise admissible' is not obvious"); H.R. Rep. 97-264 at
24-25, *reprinted at* 1981 U.S.C.C.A.N. 2577, 2593-94 (stating
that, in relation to family waiver provision, "the scope of the
waiver and the meaning of 'otherwise admissible' have
become increasingly unclear").

My doubts are reinforced by looking at the history and
intent of the waiver. Section 212(k) was added in 1981 "to
authorize the Attorney General to waive certain *technical
defects* in immigrant visas which are not the fault of the alien
involved." H.R. Rep. 97-264, 34, *reprinted in* 1981
U.S.C.C.A.N. 2577, 2603 (emphasis added); *see also* C. Gor-
don, et al., *Immigration Law and Procedure* § 63.12
("§ 212(k) is intended to provide relief from technical defects
in visas that are not the fault of the noncitizen"). For example,
the "waiver may be granted if the foreign consulate placed an
improper classification symbol on the immigrant visa cover
page, or where a classification has changed due to the nonciti-
zen turning twenty-one years old." C. Gordon, et al., *Immi-
gration Law and Procedure* § 63.12 A provision similar to

section 212(k) existed in earlier versions of the act, but was inadvertently dropped when the act was amended in 1965. H.R. Rep. 97-264, 34, *reprinted in* 1981 U.S.C.C.A.N. 2577, 2603.

The majority reasons that to consider the Shins' lack of valid visas as to both the first relevant precondition to eligibility for a 212(k) waiver — inadmissibility pursuant to 1182(a)(7)(A)(I) — and the second relevant precondition — that the Shins be "otherwise inadmissible"— results in impermissible "double counting." Instead, the majority reasons, application of 212(k) waives the relevant basis for inadmissibility, and the Shins are therefore admissible " 'other' than because of the invalid visa." *Cf. Corona-Mendez v. Holder*, 593 F.3d 1143 (9th Cir. 2010); *Matter of Sosa-Hernandez*, 20 I & N Dec. 758 (1993). The facts of the present case are quite distinct, to my mind, from the circumstances of *Corona-Mendez* and *Sosa-Hernandez*, which concerned the 237(a)(1)(H) waiver.

The Shins' visas were derivative of their mother's fraudulently-obtained LPR status, and thus void *ab initio*. It would appear that the Shins were never in possession of valid visas and also were not "otherwise admissible" because, without status derivative of their mother's status, there was no basis for their admission to the United States. The Shins are not "otherwise" inadmissible because of a defect in their visas, but the total non-existence of the precondition to their issuance in the first place. The 212(k) waiver might eliminate the defect in the Shins' visas, but that waiver alone does not provide a basis for their admission, which was predicated on their mother's fraudulently-obtained status.

## III.

I doubt that the Shins' situation represents the type of inadmissibility that section 212(k) was intended to remedy, and do not agree that the majority opinion represents the plain lan-

guage of the statute. Indeed, the majority's opinion is inconsistent with that of the Board in this case. I agree with the majority that we have not yet been presented with an opinion from the Board that is entitled to *Chevron* deference. *Chevron U.S.A. v. Natural Res. Def. Council*, 467 U.S. 837 (1984). The Board's decision in the Shins' case is an unpublished one-member decision that does not represent binding agency precedent. *See Ramos-Lopez v. Holder*, 563 F.3d 855, 858-59 (9th Cir. 2009); *Marmolejo-Campos v. Holder*, 558 F.3d 903, 909 (9th Cir. 2009).

The Board's opinion is nevertheless entitled to *Skidmore* deference. *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Under this standard, "The weight [accorded to an administrative] judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *United States v. Mead Corp.*, 533 U.S. 218, 228 (2001), citing *Skidmore*, 323 U.S. at 140; *see also Morales-Garcia v. Holder*, 567 F.3d 1058, 1061 (9th Cir. 2009) ("Where, however, the [Board] resolves an appeal in an unpublished decision, as in this case, we defer to its interpretations of the INA not resolved by prior precedential decisions only to the extent of its thoroughness and overall persuasiveness"); *Miranda Alvarado v. Gonzales*, 449 F.3d 915, 922 (9th Cir. 2006) (collecting cases).

The Board determined that the Shins were not eligible for a 212(k) waiver because "the respondents stand as aliens who have never been in possession of a valid immigrant visa." The Board also determined that the Shins were not "otherwise admissible" because their mother received her status as the spouse of a skilled worker, but "the factual basis for the grant of the visa to the respondents' mother never existed." Thus, with their mother's status void, the Shins were never "otherwise admissible." The majority may prefer a different interpretation, but that is not the *Skidmore* test. The Board's

interpretation, in my view, is persuasive and consistent with the language of the statute. That is all that is required.

## IV.

Obviously, the three judges of this panel lack consensus on the meaning of section 212(k). The statute is not, as the majority says, clear. I question why it is necessary to interpret the statute in a vacuum, without guidance from the Board, as the majority does. In light of our duty to defer to an agency's reasonable interpretation of a statute that it administers, *Chevron*, 467 U.S. 837, and the "ordinary remand requirement," *INS v. Orlando Ventura*, 537 U.S. 12, 17 (2002) (per curiam), I would remand to the Board to give the Board an opportunity to rule, in a precedential opinion, on the issue of statutory interpretation presented here.

The importance of deference to an implementing agency is part of our law. In *Chevron*, the Court emphasized: "We have long recognized that considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer, and the principle of deference to administrative interpretations." 467 U.S. at 844 (footnote omitted); *see also INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999) (Board interpretation of INA is entitled to deference); *Auer v. Robbins*, 519 U.S. 452, 456-58 (1997). When we proceed to the interpretation of a statute in the absence of agency guidance, we create the potential for conflict between ourselves and the agency, and between ourselves and other circuits. Inversion of this sequence is not without consequences. *See, e.g. Nat'l Cable & Telecomm. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967 (2005); *id.* at 1015-20 (Scalia, J., dissenting); *Mead*, 533 U.S. at 239-61 (Scalia, J., dissenting).

Remand is an appropriate option. In *Orlando Ventura*, the Court advised that, "[g]enerally speaking, a court of appeals should remand a case to an agency for decision of a matter

that statutes place primarily in agency hands." 537 U.S. at 16 (per curiam); *see also Gonzales v. Thomas*, 547 U.S. 183 (2006) (per curiam). Since *Orlando Ventura*, we have endeavored to distinguish "between circumstances in which remand is necessary . . . and circumstances in which remand is unnecessary because the BIA exercised its expertise before the case came before us." *Kawashima v. Holder*, 593 F.3d 979, 987 (9th Cir. 2010); *see also Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121, 1132-34 (9th Cir. 2006) (en banc) (declining to remand where the legal issue was the interpretation of a state criminal statute, which was not an area committed to the agency's expertise); *Perez-Enriquez v. Gonzales*, 463 F.3d 1007, 1014-15 (9th Cir. 2006) (en banc).

In some cases we have remanded to the Board for its guidance on a question of statutory interpretation arising under the INA. For example, in *Velazquez-Herrera v. Gonzales*, we remanded a petition to the Board "so that it may issue a precedential decision defining what constitutes a crime of child abuse [as used in the INA] and apply that definition to petitioner's conviction." 466 F.3d 781, 782 (9th Cir. 2006). We concluded that it would be "prudent to allow the BIA in the first instance to settle upon a definition of child abuse in a precedential opinion." *Id.* at 783. Similarly, in *Chen v. Mukasey*, we remanded a petition to the Board for interpretation of INA section 1158(d)(6), respecting frivolous applications for asylum, in the first instance "in light of a recent decision in the Second Circuit." 527 F.3d 935, 936 (9th Cir. 2008); *see also Kawashima*, 593 F.3d at 988 (remanding to the Board to consider types of evidence that may be considered pursuant to *Nijhawan v. Holder*, 129 S. Ct. 2294 (2009)).

Both the rule of *Chevron* deference and the ordinary remand rule sound in the same rationale: deference to the agency charged with the administration of a statute in the first instance. The agency possesses expertise in the subject matter and has been entrusted with administration of the relevant statutory scheme. *See Nat'l Cable*, 545 U.S. at 980. In light

of the Board's view in this case, and my own reading of the statute, I do not believe that the majority's opinion represents the plain meaning of the statute. Although the Board's decision in this case is not precedential, it is persuasive. To resolve this obvious different definition of the meaning of the statute, I believe that the most prudent course is to remand the issue to the Board for a published opinion.

I therefore dissent.