DOLLY M. GEE, UNITED STATES DISTRICT JUDGE
Before the Court is Defendants' United States Department of Homeland Security, et al.'s Motion for Summary Judgment ("MSJ"). [Doc. # 46.] For the reasons set forth below, the Court GRANTS the motion.
I.
FACTUAL AND PROCEDURAL BACKGROUND
This suit stems from Plaintiff Nkwain William Ngamfon's unsuccessful 2013 application for naturalization as a U.S. citizen. In light of Defendants' reasons for denying Plaintiff's application, the Court must explore Plaintiff's lengthy and complicated family history.
Plaintiff was born in Cameroon in 1968. Ngamfon Decl. at ¶ 2. He learned English in high school. Defs.' SUF 3. Plaintiff's eldest child, Fichanfie Nkwain Ngamfon ("Fichanfie"), was born in Cameroon in 1990 and still resides there. Defs.' SUF 6. Carolyn Djai is Fichanfie's mother. Defs.' SUF 7. Plaintiff's second child, Ngamfon Nyohnufon Eshikim Nkwain ("Nyohnufon"), was born in 2001 in Cameroon and still resides there. Defs.' SUF 8. Made Ernestine Desiree is Nyohnufon's mother. Defs.' SUF 9. Plaintiff was never married to either Djai or Desiree. Defs.' SUF 14-19.
In 2003, Plaintiff applied for a B Visitor Visa to enter the United States. Defs.' SUF 34. He claimed in that application that he was married to Desiree. Defs.' SUF 35-36. Plaintiff stated in the application that he wanted to visit the United States to attend a conference in Spokane, Washington, where he would be meeting Nancy Herselius and staying at the Red Lion Hotel. Defs.' SUF 38. This application, like the rest of the applications described below, required Plaintiff to acknowledge *980 by signature that his answers were true and correct and that making false or misleading statements may result in the permanent refusal of a visa or entry into the United States. Defs.' SUF 40. His application was denied and the reviewing consular officer noted that the documents he submitted in support of his application "appeared fake." Defs.' SUF 41.[1] Notwithstanding the officer's note, according to Defendant, the "records do not indicate the reason for the denial." MSJ at 5 n. 3.
Plaintiff applied a second time for a B Visitor Visa in 2005. Defs.' SUF 42. He stated again that Desiree was his wife. Defs.' SUF 43-44. The application also inquired into whether he had ever been refused a visa to the United States. Plaintiff answered "no." Defs.' SUF 45. The State Department issued the visa, and Plaintiff took a brief trip to the United States that year. Defs.' SUF 47.
Several things happened in 2006. First, Plaintiff married Nsa Odette Ekinyoh. Defs.' SUF 14. Within a week of their marriage, Plaintiff applied for an F Student Visa. Defs.' SUF 48; Pl.'s SUF 7. He stated in the application that he was "single, never married" and did not list a spouse. Defs.' SUF 49. When a consular official interviewed Plaintiff, however, he stated that he was engaged with one child. Defs.' SUF 54. He had two children at the time. Despite that omission and the arguable discrepancy as to his marital status, the United States consulate issued the student visa. Defs.' SUF 55. When Plaintiff arrived in the United States, he enrolled in classes to become a physician's assistant. Pl.'s SUF 9. Shortly after Plaintiff arrived in the United States, his marriage with Ekinyoh "faltered" and they became separated. Opp. at 6; Pl.'s SUF 7. He also applied around that time for a 2007 diversity visa. Defs.' SUF 56. In the application, he stated that he was married to Desiree, and had two children, Fichanfie and Nyohnufon. Defs.' SUF 57. The State Department issued him a lottery number, but denied him a visa. Defs.' SUF 56.
Plaintiff then applied in 2007 for the 2008 diversity lottery, and again received a lottery number. Defs.' SUF 59. In that application, Plaintiff answered he was single and answered "N/A" when asked to list the names, dates and places of birth, and addresses of his children. Defs.' SUF 63, 65. This time Plaintiff received a visa. Defs.' SUF 68. Shortly thereafter, he applied *981 to adjust his status to permanent resident. Defs.' SUF 69. He stated that he was not married and had no children. Defs.' SUF 71. Plaintiff also submitted Form G-325A with his application, wherein he again answered that he was single. Defs.' SUF 79.
An immigration officer also interviewed Plaintiff in connection with this application. In that interview, Plaintiff corrected himself by stating he was married to Ekinyoh and submitting a revised application page stating the same and listing his children. Defs.' SUF 86, 87. The officer asked Plaintiff whether he had "by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States or any immigration benefit." Plaintiff answered "no." Defs.' SUF 88. Plaintiff's application was approved, and he became a permanent resident in 2008. Defs.' SUF 89.
In 2010, Plaintiff officially divorced Ekinyoh, Defs.' SUF 15, and had a third son, Nathan Ngamfon, with his former girlfriend Thelma Nkinen, Defs.' SUF 10, 11. Nathan is a United States citizen. Three years later, in 2013, Plaintiff applied for citizenship himself. Defs.' SUF 90. He stated in that application that he was "single, never married." Defs.' SUF 91. The application also asked whether Plaintiff had ever given false or misleading information to any government official, or ever lied to any government official, in connection with an application for an "immigration benefit." Defs.' SUF 97, 98. He answered "no." An immigration official interviewed him in connection with his application, and during that interview, Plaintiff corrected himself by stating he had been married once outside the United States, but maintained that he had never given false or misleading information to a government official. Defs.' SUF 102, 104, 106, 107.
Eighteen months later, in 2015, USCIS interviewed Plaintiff again, and Plaintiff submitted two sworn statements.[2] Defs.' SUF 112. In the first, he stated that he was married to Sui in 2000 and Ekinyoh in 2006.[3] Defs.' SUF 118. USCIS denied Plaintiff's naturalization application in 2015 on the grounds that he made material misrepresentations in order to obtain immigration benefits and did not have the requisite good moral character for naturalization. Liggett Decl., ¶ 4, Ex. 22 at 4-5.
Plaintiff then filed an administrative appeal of the denial. Defs.' SUF 124. His paperwork associated with that appeal stated that he did not misrepresent his marital status in 2007 and 2008 because (1) Sui, who was in Cameroon, caused their marriage to be invalid, (2) he was never married to Desiree, and (3) he was never married to Ekinyoh. When almost two years had passed, and USCIS had still not responded to the appeal, Plaintiff filed the present action in January 2017, seeking a declaration by this Court that Plaintiff is eligible for naturalization. [Doc. # 1.] In May 2017, USCIS affirmed the denial of Plaintiff's application on the same grounds. Defs.' SUF 130.
In July 2017, Defendants issued Plaintiff a Notice to Appear in immigration court for removal proceedings. Defs.' SUF 131. The Notice charged Plaintiff as an "alien removable form the United States for procuring ... immigration benefit[s] by fraud *982 of by willfully misrepresenting a material fact." Id. The Los Angeles Immigration Court found that Defendants "provided clear, convincing, and unequivocal evidence that Plaintiff was removeable as charged ... for seeking to procure immigrant visas and entry documents based on fraud and willful misrepresentation of material facts, namely his marital status, on his 2005 B visa." Defs.' SUF 133.
Plaintiff is currently married to Vickie Kolling, a United States citizen. Defs.' SUF 17. Plaintiff and Kolling have one daughter, Wrisy Ngamfon, and expect another child in December. Defs.' SUF 17; Pl.'s SUF 21. Plaintiff, now a board-certified physician's assistant, runs a wound-care practice and employs "numerous individuals." Pl.'s SUF 20. He has always paid his taxes and has never been arrested or convicted of a crime. Id.
II.
LEGAL STANDARD
A. Standard of Review
A district court reviews a USCIS naturalization decision de novo. 8 U.S.C. § 1421(c). It makes it own findings of facts and conclusions of law-those made by USCIS do not bind the Court. Id. ; United States v. Hovsepian , 359 F.3d 1144, 1162 (9th Cir. 2004) ("the district court has the final word and does not defer to any of the [USCIS's] findings or conclusions"). The naturalization applicant bears the burden of showing by a preponderance of the evidence that he is eligible for citizenship. I.N.S. v. Pangilinan , 486 U.S. 875, 886, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) ; Hovsepian , 359 F.3d at 1168.
B. Summary Judgment Standard
Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) ; accord Wash. Mut. Inc. v. United States , 636 F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. Nat'l Ass'n of Optometrists & Opticians v. Harris , 682 F.3d 1144, 1147 (9th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc. , 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) ). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Liberty Lobby , 477 U.S. at 248, 106 S.Ct. 2505.
The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett , 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " Id. at 324, 106 S.Ct. 2548 (quoting Fed. R. Civ. P. 56(c), (e) ); see also Norse v. City of Santa Cruz , 629 F.3d 966, 973 (9th Cir. 2010) (en banc ) (" Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." Soremekun v. Thrifty Payless, Inc. , 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." Id.
Where the issues before the Court are questions of law, the case is particularly "well suited" for summary judgment. Del Real, LLC v. Harris , 966 F.Supp.2d 1047, 1051 (E.D. Cal. 2013) ; see also *983 Asuncion v. Dist. Dir. of U.S. Immigration & Naturalization Serv. , 427 F.2d 523, 524 (9th Cir. 1970) (district court properly resolved motion for summary judgment where issues presented were comprised solely of questions of law).
III.
DISCUSSION
Defendants argue the Court should not declare Plaintiff eligible to naturalize for two reasons.[4] First, they claim that at the time of his naturalization application, Plaintiff had not been "lawfully admitted" for permanent residence-a requirement for naturalization-because he obtained that status through material misrepresentations. MSJ at 12. Second, they argue Plaintiff may not naturalize because he is statutorily precluded from demonstrating the requisite good moral character. Id. Since Defendants' first argument presents sufficient grounds for the Court to resolve the motion, the Court declines to reach the second.
B. Plaintiff Did Not Lawfully Adjust to Permanent Resident Status
To be eligible for naturalization, an applicant must have been "lawfully admitted to the U.S. for permanent residence" and must have resided in the U.S. for at least five years. 8 U.S.C. § 1427(a). "Lawfully admitted for permanent residence" is defined as the "status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed." 8 U.S.C. 1101(a)(20). In the Ninth Circuit, admission is not "not lawful if it is regular only in form. The term 'lawfully' denotes compliance with substantive legal requirements, not mere procedural regularity." Monet v. INS , 791 F.2d 752, 753-54 (9th Cir.1986). If an applicant is found not to have complied with the substantive legal requirements, he is deemed unlawfully admitted for permanent residence. Kyong Ho Shin v. Holder , 607 F.3d 1213, 1217 (9th Cir. 2010) (holding that someone who obtains permanent resident status does so unlawfully if later proceedings reveal that he was in fact ineligible to obtain that status in the first place).
One of the substantive legal requirements for obtaining lawful permanent residency is "admissibility." 8 U.S.C. § 1255(a). An applicant is inadmissible by law if he "seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit" by "fraud or willfully misrepresenting a material fact." 8 U.S.C. § 1182(a)(6)(C)(i) (emphasis added). For purposes of determining admissibility, a misrepresentation is deemed "willful" if it was "deliberate and voluntary."
*984 Espinoza-Espinoza v. Immigration & Naturalization Serv. , 554 F.2d 921, 925 (9th Cir. 1977) ; United States v. Arango , 670 F.3d 988, 995 (9th Cir. 2012). "[T]here is no requirement that an intent to deceive must be shown." Espinoza-Espinoza , 554 F.2d at 925 ; Forbes v. I.N.S. , 48 F.3d 439, 442 (9th Cir. 1995) ("Proof of an intent to deceive is not required. Rather, knowledge of the falsity of a representation is sufficient.") (internal citations omitted).
Materiality has a unique definition in the immigration context. Kungys v. United States , 485 U.S. 759, 772, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988). A material misrepresentation is one that is "predictably capable of affecting, i.e., ha[s] a natural tendency to affect, the official decision ... whether the applicant meets the requirements for citizenship." Id. at 771, 108 S.Ct. 1537. Put another way, the materiality of a misrepresentation depends on "whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified." Id. at 771-72, 108 S.Ct. 1537. The Ninth Circuit views this as a heightened standard. United States v. Alferahin , 433 F.3d 1148, 1155 (9th Cir. 2006) ; United States v. Puerta , 982 F.2d 1297, 1305 (9th Cir. 1992) (stating that in the naturalization context, immigration law has a "higher standard of materiality ... than does the criminal law generally").
Defendants argue that because Plaintiff made material misrepresentations on his visa applications and during adjustment proceedings, he was never lawfully admitted as a permanent resident, and he is therefore unqualified for naturalization. MSJ at 12-19. Plaintiff concedes that he made false and inconsistent statements on various applications and during interviews and does not dispute that these misrepresentations were willful. Instead, he argues that these misstatements were immaterial, and that therefore he lawfully adjusted to permanent resident status and now qualifies for naturalization. Opp. at 12-17. The Court will analyze each set of Plaintiff's misstatements individually.
1. Plaintiff's 2003 B Visa Application
Defendants point to two allegedly material misrepresentations in Plaintiff's 2003 application: his statement that he applied for the visa to attend a conference in Spokane, and his statement that he was married to Desiree despite never having been married to her. MSJ at 15. First, Defendants have not shown that Plaintiff's statement regarding the Spokane conference was in fact a misrepresentation. Defendants argue that because Plaintiff testified in a 2018 deposition that he did not remember the name of the conference, the sponsoring organization, or his relationship with his contact in Spokane, he misrepresented that information when he filled out his application in 2003. MSJ at 15. But, as Plaintiff points out, his inability to recall these details in 2018 does not show that he misrepresented the information in 2003. Opp. at 14. Nor do the reviewing consular officer's notes stating that Plaintiff's 2003 application documents "appeared fake" establish that Plaintiff made misrepresentations in his application. That officer's impression of Plaintiff's application does not establish that Plaintiff made any false statements-only that the officer was skeptical of the documents' veracity. And Defendant cites to no authority supporting the notion that a consular officer's notes in connection with an application are conclusive in determining an applicant's statement's truth or falsity. The Court therefore cannot conclude as a matter a law that these were material misrepresentations.
On the other hand, Defendants have shown that Plaintiff's false statement regarding his relationship with Desiree was material. Plaintiff admits that he was *985 never married to Desiree. Defs.' SUF 19. Instead Plaintiff argues that the misrepresentation was immaterial because Defendants offer "no explanation" as to why Plaintiff's statement was predictably capable of affecting the decision to grant or deny the application. Opp. at 14. But Plaintiff ignores Defendants' argument that marital status "is an indicia [sic ] of whether the applicant can demonstrate whether he has intentions of abandoning his home country" and overstaying his visa. MSJ at 14 (citing 8 U.S.C. § 1101(a)(15)(B) ). In other words, Defendants contend that had the consular officer known that Plaintiff in fact did not have a spouse in Cameroon, she would have been less likely to approve Plaintiff's application. Defendants' characterization of this misrepresentation is consistent with Ninth Circuit authority, which generally interprets misrepresentations of marital status to be material in the immigration context. See, e.g., Arango , 670 F.3d at 995 (treating naturalized citizen's statement in applications for legal permanent status that he was married to an American citizen as material when it came to light that the marriage was a "sham"); Gang Chen v. Sessions , 683 F. App'x 583, 584 (9th Cir. 2017) (treating as material a naturalization applicant's knowing "false statements and omissions" about his marital status in applications for legal permanent residence and naturalization; Lising v. I.N.S. , 124 F.3d 996, 998 (9th Cir. 1997) (describing BIA's determination of applicant's concealment of a marriage in a visa application as grounds for deportation, but staying case to allow for BIA's reconsideration of whether applicant had in fact concealed information about his two children). The Court therefore determines this misrepresentation was material.[5]
2. Plaintiff's 2005 B Visa Application
Defendants cite two misrepresentations relating to the 2005 visa application: Plaintiff's statement that he was married to Desiree despite never having been married to her, and his statement that he had never been refused a visa despite the fact that his 2003 visa application was denied. Id. Plaintiff's misrepresentation regarding his marital status was material for the same reasons his similar misrepresentation in his 2003 application was material.
Regarding Plaintiff's omission of his 2003 visa denial, Defendants argue that had the reviewing officers known his prior application had been denied, they might have inquired into Plaintiff's "fraudulent" statements in the 2003 application regarding the Spokane conference and his marital status in that application. MSJ at 15. Plaintiff's misstatements regarding the conference were not material. As discussed above, Defendants have not shown that the statements regarding the Spokane conference were misrepresentations or fraud in the first place. Even if the officer had further investigated those statements, the evidence before the Court does not demonstrate that the officers would have had a basis for finding the statements false. Thus, the Court cannot conclude that this would have had a predictable effect on the visa decision.
*986 The Court also fails to see the logic in Defendants' contention that had Plaintiff revealed his earlier visa denial, the reviewing officers would have renewed an investigation into Plaintiff's marital status and discovered he had misrepresented his relationship with Desiree. MSJ at 15. Defendant does not present the Court with any evidence showing that officers reviewing applications of previously unsuccessful applicants normally investigate the truth of those applicants' stated family or marital history. Furthermore, even if that is the normal procedure, the Court cannot conclude that such an investigation would have had a predictable effect on the 2005 visa decision, since Plaintiff's 2003 application was denied in spite of Plaintiff's statement he had a wife in Cameroon (which, if it were true, would make it less likely that he would abandon Cameroon and overstay his visa in the United States). In other words, he was denied a visa in 2003 despite representing himself as a more qualified applicant than he really was. Therefore, Defendants have failed to show that Plaintiff's misrepresentation regarding his previously denied application was material.
3. Plaintiff's 2006 F Visa Application
Defendants point to two more misrepresentations in the 2006 visa application: Plaintiff's statement that he was single, never married, despite having married Ekinyoh days earlier, and his statement that he had never previously been denied a visa. MSJ at 14. Defendants' arguments, and consequently the Court's analysis and conclusion, pertaining to Plaintiff's statement that he had never previously been denied a visa are the same as above. Defendants have failed to show the materiality of that misrepresentation.
Plaintiff's statement regarding his marital status is slightly different here than in the previous two applications. Whereas in the other applications, Plaintiff was single and stated that he was married, Plaintiff stated in this application that he was single despite being married to Ekinyoh. Defs.' SUF 14, 53. Defendants argue that F Student Visa applicants are more likely to receive visas when they demonstrate they have a spouse in their home country because a home-country-marriage makes it less likely that an applicant will overstay his visa. MSJ at 14-15. Unlike Plaintiff's previous misrepresentations, which made him appear to be a more attractive candidate, his misrepresentation on this application that he was single (when in fact he had a wife in Cameroon) made him a less qualified candidate than he in fact was. Defs.' SUF 49. Since Plaintiff received a visa despite presenting himself as a less attractive applicant, the Court concludes that this misrepresentation was immaterial because it did not have a natural tendency to affect the official decision on Plaintiff's application.
4. Plaintiff's Applications for Diversity Visas in 2007 and 2008
Defendants point to Plaintiff's statement in his 2007 diversity visa application that he was married to Desiree, when he was in fact married to Ekinyoh, and his statements in his 2008 application that he was not married and had no children, when in fact he was married to Ekinyoh and had two children. MSJ at 17.
Defendants have shown that Plaintiff's misstatements regarding his wife and children were material because they have demonstrated that such an omission has a predictable effect on the decision to grant a diversity visa. Defendant notes that a consular officer reviewing diversity visa lottery applications must reject an application if that officer discovers that the applicant failed to "list his spouse or children on his diversity visa petition." MSJ at 16;
*987 42 C.F.R. § 42.33(b)(1)(v) (requiring applicants for diversity visas to list the "name[s], date[s] and place[s] of birth and gender of the petitioner's spouse and child[ren], if any"); 9 Foreign Affairs Manual § 42.33 n. 5.1 ("Entries lacking the required information [will be disqualified] during processing"). Plaintiff's failure to identify his wife and two children in his diversity visa applications was therefore predictably capable of affecting the decision on his application-had the officer discovered the omissions, she would have been obligated to outright reject Plaintiff's application as a matter of law.
5. Plaintiff's Adjustment Proceedings
In connection with his application for adjustment to permanent resident status, Plaintiff submitted a form in which he was asked whether he had, "by fraud or willful misrepresentation of a material fact, ever sought to procure, or procured, a visa, other documentation, entry into the United States or any immigration benefit." Defs.' SUF 72. He answered "no." Id. He then confirmed that answer during a subsequent in-person interview. Defs.' SUF 88.
Defendants' argument here is derivative of the arguments above. They contend that Plaintiff made false statements during adjustment proceedings when he willfully misrepresented that he had never made any willful misrepresentations in his previous visa applications. MSJ at 18. In response, Plaintiff argues only that because the previously described misrepresentations were not material, Plaintiff made no misrepresentations during adjustment proceedings. Opp. at 16-17. As discussed above, however, four of Plaintiff's previous misrepresentations were material. Therefore, Plaintiff made a fifth material misrepresentation when he stated during adjustment proceedings that he never previously made material misrepresentations.[6]
In sum, the Court must determine that Plaintiff was "inadmissible" for permanent residence under section 1182(a)(6)(C)(i) because he made the following material misrepresentations in order to procure immigration benefits: (1) stating on his 2003 B visa application that he was married to Desiree when in fact he was not, (2) stating on his 2005 B visa application that he was married to Desiree when in fact he was not, (3) stating on his 2007 diversity visa application that he was married to Desiree when he was in fact married to Ekinyoh, (4) omitting Ekinyoh and his children from his 2008 diversity visa application, and (5) stating in his 2008 adjustment proceedings that he had never previously made any material misrepresentations in order to procure immigration benefits. Because he was "inadmissible" at the time he adjusted to permanent legal status, he was not lawfully admitted under section 1255(a). See Segura v. Holder , 605 F.3d 1063, 1067 (9th Cir. 2010). In light of binding Ninth Circuit authority, the Court must conclude that his grant of permanent *988 legal status was void ab initio. Kyong Ho Shin , 607 F.3d at 1217. In turn, because he was never lawfully admitted, he is not eligible for naturalization under section 1427.
Defendants also argue that Plaintiff's false statements during his naturalization proceedings preclude him by law from establishing the good moral character necessary to gain citizenship. MSJ at 19-21. But because the misrepresentations detailed above render Plaintiff inadmissible, and therefore ineligible to naturalize, the question of Plaintiff's moral character is moot and the Court declines to reach it.
IV.
CONCLUSION
In light of the foregoing, the Court GRANTS Defendants' motion for summary judgment.
IT IS SO ORDERED.

Plaintiff objects to this evidence as (1) improperly authenticated, (2) hearsay, and (3) irrelevant. The evidence that the documents "appeared fake" comes from a notation on Plaintiff's visa records, pulled from the Consular Consolidated Database by April Wooten, who is authorized to certify, and did certify, the authenticity of those records. Therefore, Plaintiff's visa records meet the definition of a self-authenticating document under Federal Rule of Evidence ("FRE") 902(11). FRE 902(11) provides that certified domestic records of a regularly conducted activity are self-authenticating so long as a qualified person, such as Wooten, certifies their authenticity pursuant to FRE 803(6). The evidence is a hearsay statement, since Defendants offer it to show that his application did in fact appear fake, but it is admissible because it falls under the hearsay exception for records of a regularly conducted activity. Fed. R. Evid. 803(6). Plaintiff has provided no reason to disbelieve that Plaintiff's visa records were made at the time by someone with personal knowledge of Plaintiff's application, kept in the normal course of consulate business, part of a regularly-practiced activity, and trustworthy. Alternatively, the evidence is admissible as a public record under FRE 803(8) because it is a public office's records of its own activities. See United States v. Loyola-Dominguez , 125 F.3d 1315, 1317 (9th Cir. 1997) (INS documents such as warrants for deportation are admissible under 803(8) ). Finally, the evidence is relevant under FRE 402 because, even if it is not conclusive, it makes it more probable the inference that Plaintiff's visa application was properly denied. Plaintiff's objection is OVERRULED .

Plaintiff disputes the facts pertaining to this second interview because he claims that, essentially, the interviewing officer was hostile and coerced Plaintiff to make certain responses. See e.g. , Defs.' SUF 116. Plaintiff does not dispute the contents of his responses or object to the admissibility of the evidence.

Tata Grace Sui is, in fact, Plaintiff's cousin. He was never married to her. Defs.' SUF 18.

Defendants also argue in a footnote that the Court should grant summary judgment specifically as to Plaintiff's cause of action for review of the denial of his naturalization application under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701. MSJ at 21 n. 5. They contend that the APA's judicial review provision, section 704, permits judicial review of agency actions only when there is "no other adequate remedy in a court." Id. ; 5 U.S.C. § 704. Defendants are correct that the Court cannot grant relief in this case under the APA, given that Plaintiff requests identical declaratory relief under another law, 8 U.S.C. § 1421(c). That provision unquestionably permits the Court to review the USCIS naturalization decision and issue a declaratory judgment as to the decision's merits. See 8 U.S.C. § 1421(c). For that reason, an "adequate remedy in court" other than through the APA exists, and Plaintiff's APA claim cannot lie. Furthermore, Plaintiff makes no argument in his Opposition against Defendant's position on the APA claim. The Court therefore GRANTS summary judgment as to Plaintiff's second cause of action under the APA.

At oral argument, Plaintiff argued that his marriage-related misrepresentations were not material to the reviewing officers' decisions to grant or deny him visas. The Court agrees that Plaintiff's false statements had a somewhat unpredictable and inconsistent effect on the officers' decisions given that the State Department denied his 2003 B Visa application when he misrepresented himself as married and granted his 2006 F Visa application when he misrepresented himself as single. The Court is bound, however, to follow Ninth Circuit precedent treating marital misrepresentations as material in analogous contexts. See Lising , 124 F.3d 996, 998.

While Plaintiff's misrepresentations are material under Ninth Circuit law, the number and inconsistency of the misrepresentations, as well as Plaintiff's reason for making them, remain perplexing. Indeed, not all of Plaintiff's misstatements benefitted him-at least two of his misrepresentations made him less likely to receive the visa he was applying for. Although misrepresentations need not be made with fraudulent intent to trigger inadmissibility, the seemingly random nature of Plaintiff's misstatements certainly indicate that he did not intend for them to "produce the conclusion that [he] was qualified" for admission. Kungys , 485 U.S. at 772, 108 S.Ct. 1537. His strange inability to truthfully state his family history is all the more baffling considering he now has a new and growing family, runs a small business, pays his taxes, and has no criminal record. In other words, Plaintiff now appears to be an upstanding member of American society.